**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREEN OCEANS, *et al.*,<br><br>   *Plaintiffs,*<br><br> v.<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR, *et al.*,<br><br>   *Defendants,*<br><br> and<br><br>SOUTH FORK WIND, LLC &<br>REVOLUTION WIND, LLC,<br><br>   *Proposed Defendant-Intervenors* | Case No.: 1:24-cv-00141-RCL |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**SOUTH FORK WIND, LLC'S AND REVOLUTION WIND, LLC'S**
**MOTION TO INTERVENE AS DEFENDANTS AND TO DEFER FILING ANSWER**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................5

    A.    Project Overviews ........................................................................................5
        1.    South Fork Wind Project .....................................................................5
        2.    Revolution Wind Project......................................................................6
    B.    Multi-Year Federal Review and Approval Processes .............................................7
        1.    South Fork Wind Federal Review and Approvals Processes........................7
            a.    Outer Continental Shelf Lands Act and National
                Environmental Policy Act.......................................................8
            b.    Endangered Species Act ........................................................10
            c.    Marine Mammal Protect Act ..................................................11
            d.    Coastal Zone Management Act................................................11
            e.    National Historic Preservation Act ...........................................11
            f.    Clean Water Act..................................................................13
        2.    Revolution Wind Federal Review and Approvals Processes.......................13
            a.    Outer Continental Shelf Lands Act and National
                Environmental Policy Act.....................................................14
            b.    Endangered Species Act ........................................................16
            c.    Marine Mammal Protect Act ..................................................16
            d.    Coastal Zone Management Act................................................17
            e.    National Historic Preservation Act ...........................................17
            f.    Clean Water Act..................................................................19
    C.    Financial Obligations and Commercial Commitments..........................................19
        1.    South Fork Wind Financial Obligations and Commercial
            Commitments...................................................................................19
        2.    Revolution Wind Financial Obligations and Commercial
            Commitments...................................................................................20

III.   ARGUMENT ........................................................................................................20

    A.    South Fork Wind and Revolution Wind Are Entitled to Intervention of
        Right................................................................................................20
        1.    South Fork Wind and Revolution Wind Have Article III Standing...........21
        2.    This Motion Is Timely .......................................................................23
        3.    South Fork Wind and Revolution Wind Have Multiple
            Significantly Protectable Interests Relating to the Subjects of This
            Action............................................................................................24
        4.    Without Intervention, Disposition of the Action Would Impede
            South Fork Wind's and Revolution Wind's Ability to Protect Their
            Distinct Interests ..............................................................................24

    5.     Existing Parties Will Not Adequately Represent South Fork
       Wind's or Revolution Wind's Interests ......................................................25
   B.    Alternatively, the Court Should Grant Permissive Intervention............................27
   C.    South Fork Wind and Revolution Wind Should Be Permitted to File Their
       Answers by the Same Deadline as Federal Defendants........................................29

IV.    CONCLUSION .................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Horse Prot. Ass'n v. Veneman*,
   200 F.R.D. 153 (D.D.C. 2001)..................................................................................26

*Carpenters Indus. Council v. Zinke*,
   854 F.3d 1 (D.C. Cir. 2017)......................................................................................23

*\*Crossroads Grassroots Policy Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015).........................................................20, 22, 23, 24, 25

*Dimond v. Dist. of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986)..................................................................................26

*EEOC v. Nat'l Children's Ctr., Inc.*,
   146 F.3d 1042 (D.C. Cir. 1998)................................................................................27

*Friends of the Headwaters v. U.S. Army Corps of Eng'rs*,
   2021 WL 1061162 (D.D.C. Mar. 20, 2021)..............................................................25

*\*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ...............................................................23, 24, 25, 26, 27

*Hardin v. Jackson*,
   600 F. Supp. 2d 13 (D.D.C. 2009) ............................................................................26

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ....................................................................................23

*Jones v. Prince George's Cnty., Md.*,
   348 F.3d 1014 (D.C. Cir. 2003)................................................................................24

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................22

*Nat. Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977)..............................................................................26, 27

*Roeder v. Islamic Republic of Iran*,
   333 F.3d 228 (D.C. Cir. 2003)..................................................................................24

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002)..................................................................................22

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) ........................................................................25

## STATUTES

16 U.S.C.
   § 1536.........................................................................................................10, 16
   § 1536 (b)(4) ..............................................................................................10, 16

R.I. Gen. Laws § 39-26-4(a)(14) .............................................................................7

Conn. Gen. Stat. § 22a-200a(3) ...............................................................................7

New York State Climate Leadership and Community Protection Act of 2019
   § 1(12)(d) ............................................................................................................6
   § 4........................................................................................................................6

## RULES

Fed. R. Civ. P.
   24(a)(2) ........................................................................2, 20, 24, 27
   24(b)(2) .........................................................................................................27
   24(c) .................................................................................................5, 29, 30

Local Civil Rule 7(j) .................................................................................5, 29

Local Civil Rule 7(m) ..................................................................................2

## OTHER AUTHORITIES

Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs,
   The White House (Mar. 29, 2021), https://www.whitehouse.gov/briefing-
   room/statements-releases/2021/03/29/fact-sheet-biden-administration-
   jumpstarts-offshore-wind-energy-projects-to-create-jobs/ ......................................6

U.S. Dep't of Energy, Advancing Offshore Wind Energy in the United States
   (Mar. 2023), https://www.energy.gov/sites/default/files/2023-03/advancing-
   offshore-wind-energy-full-report.pdf......................................................................6

## I.    INTRODUCTION

South Fork Wind, LLC ("South Fork Wind") is the developer of the South Fork Wind Farm and South Fork Export Cable (collectively, the "South Fork Wind Project"), an offshore wind energy project which is already providing clean, reliable power to homes and businesses in New York and will soon be completed.  Revolution Wind, LLC ("Revolution Wind") is the developer of the separate Revolution Wind Farm and Revolution Export Cable (collectively, the "Revolution Wind Project"), which will provide clean, reliable power to Rhode Island and Connecticut.

South Fork Wind has worked to develop the South Fork Wind Project for over a decade, invested over a billion dollars, already installed ten of its twelve wind turbines, began supplying power to the New York electrical grid, and is on track to complete construction in the coming weeks.  *See* Declaration of Melanie Gearon in Support of South Fork Wind's Intervention ("Gearon Decl.") ¶¶ 5-8.  Revolution Wind has worked to develop the Revolution Wind Project for over seven years, has commercial commitments in excess of a billion dollars to date, and has begun onshore construction.  *See* Declaration of Kellen Ingalls in Support of Revolution Wind's Intervention ("Ingalls Decl.") ¶¶ 4, 8.

The Plaintiff organizations and individuals (collectively, "Plaintiffs") seek an order reversing and setting aside separate approvals issued by Federal Defendants[1] to each of the Projects[2] respectively, alleging violations of the Administrative Procedure Act ("APA"), National Environmental Policy Act ("NEPA"), Endangered Species Act ("ESA"), Outer Continental Shelf

---

[1] "Federal Defendants" are the U.S. Department of the Interior, the Secretary of the Interior, the Bureau of Ocean Energy Management ("BOEM"), the Director of BOEM, the National Marine Fisheries Service ("NMFS"), the Administrator of NMFS, the U.S. Army Corps of Engineers ("USACE"), and the Commanding General of USACE.

[2] The South Fork Wind Project and the Revolution Wind Project are two separate projects with separate administrative records supporting separate approvals and providing different States with electricity.  The two are referred to collectively as "Projects" for purposes of this Motion.

Lands Act ("OCSLA"), Marine Mammal Protection Act ("MMPA"), Coastal Zone Management Act ("CZMA"), National Historic Preservation Act ("NHPA"), Clean Water Act ("CWA"), and Migratory Bird Treaty Act ("MBTA"). *See* Compl. to Reverse and Set Aside Final Agency Action ("Compl."), Dkt. 1, at 4-5.

South Fork Wind and Revolution Wind each seek intervention of right in this action pursuant to Federal Rule of Civil Procedure 24(a)(2) to defend their significant investments and interests in their respective Projects.[3] Alternatively, South Fork Wind and Revolution Wind each seek leave for permissive intervention under Rule 24(b). Pursuant to Local Civil Rule 7(m), counsel for South Fork Wind and Revolution Wind have consulted with counsel for Plaintiffs and Federal Defendants. Plaintiffs stated that they need to review the Motion before they can determine their response, and Federal Defendants take no position on South Fork Wind's and Revolution Wind's intervention.

South Fork Wind and Revolution Wind readily meet the test for intervention of right. As a threshold matter, both have standing for the reasons described below. *See infra* Section III.A.1. Both can satisfy the four-factor test for intervention of right as well. *First*, the requested intervention is timely and would not prejudice any of the existing parties, given that South Fork Wind and Revolution Wind have moved to intervene 21 days after Plaintiffs filed their Complaint.

---

[3] Two earlier-filed now consolidated cases challenging the South Fork Wind Project on similar grounds are currently pending in this Court before Judge Mehta. *Pres. Soc'y of Newport Cnty. v. Haaland,* No. 1:23-cv-03510-APM (D.D.C.); *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-3514-APM (D.D.C) (case consolidated with No. 1:23-cv-03510-APM). Two now consolidated cases challenging the Revolution Wind Project are also currently pending before Your Honor. *See Pres. Soc'y of Newport Cnty. v. Haaland*, No. 1:23-cv-03513-RCL (D.D.C.) (J. Lamberth) (consolidated with *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-03515-RCL). South Fork Wind and Revolution Wind have been granted intervention of right in these cases. If granted intervention in the instant case, South Fork Wind and Revolution Wind intend to move to sever the South Fork Wind challenges from the Revolution Wind challenges.

*See infra* Section III.A.2. *Second*, South Fork Wind and Revolution Wind have direct, substantial, and legally protectable interests in their respective Project's challenged approvals. South Fork Wind and Revolution Wind each sought, consulted on, and received many required permits and approvals from different state and federal authorities—including the approvals at issue in this case that are required for construction and operation of the Projects at significant expense. *See infra* Sections II.B & III.A.3. *Third*, Plaintiffs' requested relief threatens to directly impair South Fork Wind's and Revolution Wind's respective interests, as an order enjoining, setting aside, or reversing the challenged approvals for the Projects would cause significant delays in construction and operation, increase costs, and threaten the investments in the Projects. *See infra* Section III.A.4. *Fourth*, both South Fork Wind's and Revolution Wind's participation in this case is necessary because their interests are distinct not only from each other's, given their distinct interests in two separate Projects, providing electricity to different States, with two separate sets of government approvals and two separate administrative records, but also from the interests of the Federal Defendants as to each Project; South Fork Wind's and Revolution Wind's interests are not adequately represented in this litigation. In contrast to Federal Defendants, South Fork Wind and Revolution Wind are each the only party that can speak to their own investments, the construction schedule and any ramifications on their respective Project's approvals, as well as to each Project's significant, legally protectable contractual and property interests if the requested relief were to be granted. Thus, no other parties are capable of adequately representing South Fork Wind's and Revolution Wind's respective interests in the two distinct subjects of this action. *See infra* Section III.A.5.

This case is the latest in a string of litigation challenging the South Fork Wind Project's or the Revolution Wind Project's federal approvals, none of which have been decided against the

validity of the Projects' approvals on the merits, and in all of which the courts have denied any requested temporary or preliminary injunctive relief.  South Fork Wind has been granted intervention in every other federal district court case challenging its project approvals (not to mention its participation in numerous New York State court lawsuits).  *See Pres. Soc'y of Newport Cnty. v. Haaland,* No. 1:23-cv-03510-APM, Minute Order (D.D.C. Dec. 12, 2023); *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-3514-APM, Minute Order (D.D.C. Dec. 6, 2023) (case later consolidated with 1:23-cv-03510-APM); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022); *Mahoney v. U.S. Dep't of the Interior*, No. 2:22-cv-01305-FB-ST, Dkt. 16 (E.D.N.Y. Mar. 14, 2022); *Allco Renewable Energy Ltd. v. Haaland*, No. 1:21-cv-11171-IT, Dkt. 121 (D. Mass. June 21, 2022); *Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK, Dkt. 18 (D.N.J. May 19, 2023) (granting intervention to movant Orsted North America Inc. ("Ørsted")[4]).  Revolution Wind has also been granted intervention in every other federal district court case challenging its project approvals.[5]  *See Pres. Soc'y of Newport Cnty. v. Haaland*, No. 1:23-cv-03513-RCL, Dkt. 14 (D.D.C. Dec. 8, 2023) (J. Lamberth)[6]; *Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK, Dkt. 18 (D.N.J. May 19, 2023) (granting intervention to movant Ørsted).  This Court should likewise grant South Fork Wind's and Revolution Wind's requests to intervene in this case.

---

[4] Ørsted is one of the indirect parent companies of South Fork Wind and Revolution Wind, as is Eversource Energy.

[5] Revolution Wind has also intervened in Rhode Island state court litigation by the same lead Plaintiff against the Revolution Wind Project.  *See Green Oceans v. Coastal Res. Mgmt. Council*, C.A. No. NC-2023-0206 (R.I. filed 2023).

[6] *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-03515-RCL, Dkt. 20 (D.D.C. Dec. 21, 2023) was consolidated with *Pres. Soc'y of Newport Cnty. v. Haaland*, No. 1:23-cv-03513-RCL, Dkt. 14 (D.D.C. Dec. 8, 2023) (J. Lamberth).

If the Court grants South Fork Wind's and Revolution Wind's Motion to Intervene, South Fork Wind and Revolution Wind respectfully request that the Court permit them to file their Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as Federal Defendants in this case or three days after intervention is granted, whichever is later. *See Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting South Fork Wind intervention in challenge to federal project approvals, and ordering it to file its Answer or other responsive pleading on same date as federal defendants); *infra* Section III.C.

## II.    BACKGROUND

### A.    <u>Project Overviews</u>

#### 1.    South Fork Wind Project

The South Fork Wind Project involves the construction and operation of an approximately 130-megawatt ("MW") commercial-scale offshore wind energy facility, consisting of 12 wind turbine generators ("WTGs"). Gearon Decl. ¶ 5. This Project is sited within commercial lease OCS-A 0517, which is located in the Atlantic Ocean approximately 19 miles southeast of Block Island, Rhode Island, and approximately 25 miles from Newport, Rhode Island, on the Outer Continental Shelf in federal waters. *Id.* The South Fork Export Cable connects the wind farm to the mainland electric grid at a substation in East Hampton, New York, for the delivery of power to the South Fork of Long Island. *Id.* ¶ 6. After receiving required federal, state, and local approvals, South Fork Wind began construction of the South Fork Wind Project in early 2022 and since then has: (1) completed construction, testing, and commissioning of the onshore substation and export cable; (2) installed and tested the offshore export cable; (3) completed installation of all inter-array cables between the twelve offshore WTG locations; (4) laid the foundations for all twelve offshore turbine locations and fully installed ten of the twelve WTGs; and (5) begun

supplying power to the New York electrical grid. *Id.* Work to complete installation and testing of the remaining WTGs will be completed in the coming weeks. *Id.*

The South Fork Wind Project is already supplying and will continue to supply renewable energy and jobs to New York State, and also provides significant economic benefits and job creation in Rhode Island and Connecticut. *Id.* ¶ 3. The South Fork Wind Project contributes to both the federal government's and New York State's carbon reduction goals. The federal government has set a goal of 30 gigawatts ("GW") of offshore wind by 2030.[7] This goal will help the federal government meet its target to achieve 100% clean electricity by 2035.[8] Similarly, New York State's climate goals further require, as a means to achieving its target of 100% zero-emission electricity by 2040, the development of 9 GW of offshore wind by 2035. *See* New York State Climate Leadership and Community Protection Act of 2019, §§ 1(12)(d) & 4.

### 2.    Revolution Wind Project

The Revolution Wind Project involves the construction and operation of an approximately 704-MW commercial-scale offshore wind energy facility, consisting of up to 65 WTGs. Ingalls Decl. ¶ 5. The Revolution Wind Project will be constructed on BOEM Renewable Energy Lease No. OCS-A 0486, which is located in the Atlantic Ocean approximately 15 miles east of Block Island, Rhode Island, and approximately 15 miles from Newport, Rhode Island, on the Outer Continental Shelf in federal waters. *Id.* The Revolution Wind Project is designed to deliver

---

[7] *See* FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs, The White House (Mar. 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-offshore-wind-energy-projects-to-create-jobs/.

[8] *See* U.S. Dep't of Energy, Advancing Offshore Wind Energy in the United States 1, 9 (Mar. 2023), https://www.energy.gov/sites/default/files/2023-03/advancing-offshore-wind-energy-full-report.pdf ("[O]ffshore wind can be a key contributor in many U.S. energy markets to achieving a zero-carbon electricity grid by 2035 and a net-zero emissions economy by 2050.").

approximately 304 MW of offshore wind capacity to Connecticut and approximately 400 MW to Rhode Island—enough clean energy to power more than 350,000 homes. *Id.* ¶ 6. The Revolution Wind Project began onshore construction in September 2023, which to date has included excavation for the underground duct banks and work zone preparation for the new interconnection station and substation. *Id.* Revolution Wind has also ordered equipment and contracted with vessels to prepare for offshore construction. *Id.*

The Revolution Wind Project will supply renewable energy and jobs to Rhode Island and Connecticut. *Id.* ¶ 3. The Revolution Wind Project will also contribute to the federal government's, Rhode Island's, and Connecticut's carbon reduction goals. In addition to the federal goal, *see supra* at 6, Rhode Island has a goal of reaching 100% renewable energy by 2033, and Connecticut aims to reach 100% zero-carbon electricity supplied to customers by 2040, *see* 39 R.I. Gen. Laws § 39-26-4(a)(14); Conn. Gen. Stat. § 22a-200a(3).

### B.   Multi-Year Federal Review and Approval Processes

#### 1.   South Fork Wind Federal Review and Approvals Processes

South Fork Wind has invested significant resources in the extensive, multi-year planning and development process for the South Fork Wind Project, including by developing voluminous technical and scientific submissions to federal, state, and municipal agencies and participating in public review processes. Gearon Decl. ¶ 11. South Fork Wind's direct involvement with Defendant BOEM goes back to July 31, 2013, when BOEM conducted a competitive lease sale for commercial leasing for wind power generation offshore Rhode Island and Massachusetts. *Id.*

¶ 12. Deepwater Wind New England, LLC won the lease, and then assigned a new, smaller lease area to South Fork Wind.[9]  *Id.*

        a.    <u>Outer Continental Shelf Lands Act and National Environmental Policy Act</u>

Pursuant to OCSLA, South Fork Wind developed and submitted to BOEM a Site Assessment Plan, which BOEM approved in October 2017.  *Id.* ¶ 13.  South Fork Wind undertook extensive field surveys to understand and characterize the environment and the Project site, including meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard, and oceanographic surveys.  *Id.* ¶ 14.  As documented in BOEM's Finding of Adverse Effect,[10] the survey work for the South Fork Wind Project also included an assessment of historic properties, including a marine archaeological survey, a terrestrial archaeological survey, a Visual Impacts Analysis, an Historic Resources Visual Effects Analysis specific to the Project, and a Cumulative Historic Resources Visual Effects Analysis.[11]  *Id.* ¶¶ 14, 27-28.

South Fork Wind prepared and submitted to BOEM a detailed Construction and Operations Plan ("COP") in June 2018, which South Fork Wind updated as the development process

---

[9] The South Fork Wind Project is owned by South Fork Wind.  South Fork Wind is a joint venture indirectly owned in equal part by Orsted North America Inc. and Eversource Energy.  South Fork was formerly known as Deepwater Wind South Fork, LLC.

[10] *See* BOEM Finding of Adverse Effect for the South Fork Wind Farm and South Fork Export Cable Construction and Operations Plan, August 2021, at 26, <u>https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SFWF_FOE_FINAL_0.pdf</u>.

[11] *See* BOEM Cumulative Historic Analysis – South Fork Wind Farm and South Fork Wind Farm Export Cable Project, November 2020, <u>https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SFWF-S106-CHRVEA.pdf</u>.

progressed.  Gearon Decl. ¶ 15.  The final version[12] is thousands of pages long, including appendices.[13]  On October 19, 2018, BOEM issued a Notice of Intent ("Notice") to prepare an Environmental Impact Statement ("EIS") under NEPA for its review of the COP.  *Id.* ¶ 16.  That Notice began a three and a half-year period of environmental review by the federal government involving South Fork Wind, ten federal agencies, five state and local cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry, to local communities, to American Indian tribes and historic preservation organizations.  *Id*.  BOEM published the draft EIS ("DEIS") for the South Fork Wind Project on January 4, 2021.  *Id.*  BOEM's NEPA process included extensive consultations and public involvement.  *Id.* ¶¶ 16-17.  BOEM held three public scoping meetings where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS, as well as three additional public meetings during the public comment period on the DEIS.  *Id.* ¶ 18.  South Fork Wind attended all of the meetings and submitted comments on the DEIS.  *Id.*  BOEM published the final EIS ("FEIS") on August 16, 2021.[14]  *Id.* ¶ 16.

On November 24, 2021, BOEM issued a Record of Decision ("ROD") documenting the U.S. Department of the Interior's decision to approve the COP with some modifications.  BOEM subsequently issued the COP approval on January 18, 2022.[15]  *Id.* ¶ 19.  Extensive additional time,

---

[12] *See* BOEM Construction & Operations Plan – South Fork Wind Farm, Vol. I, May 2021, https://www.boem.gov/sites/default/files/documents/renewable-energy/South-Fork-Construction-Operations-Plan.pdf.

[13] *See* BOEM Construction & Operations Plan – South Fork Wind Farm, Vol. II, May 2021, https://www.boem.gov/renewable-energy/state-activities/volume-ii-appendices.

[14] The DEIS and FEIS are available under the "Environmental Review" tab at https://www.boem.gov/renewable-energy/state-activities/south-fork.

[15] Both the BOEM ROD and the COP approval are available under the "Construction and Operations Plan" tab at https://www.boem.gov/renewable-energy/state-activities/south-fork.

effort, and financial resources were also expended to secure other required permits and approvals for the South Fork Wind Project. *Id.* ¶¶ 21-23.  Notably, the New York Public Service Commission unanimously approved a Certificate of Environmental Compatibility and Public Need under Article VII of New York's Public Service Law for the onshore components of the South Fork Wind Project after a nearly three-year long environmental review process that involved extensive negotiations with state agencies and other stakeholders and interested parties.  *Id.* ¶ 20.

b.    <u>Endangered Species Act</u>

BOEM and other cooperating agencies for the South Fork Wind Project conducted ESA Section 7 consultation on the Project.  16 U.S.C. § 1536; Gearon Decl. ¶ 22.  On October 1, 2021, NMFS issued an ESA Biological Opinion ("BiOp")[16] that assessed the potential effects of construction, operation, maintenance, and decommissioning of the South Fork Wind Project on ESA-listed whales, sea turtles, fish, corals, and designated critical habitat in the project area.  *Id.*  The BiOp concluded the South Fork Wind Project is not likely to adversely affect certain ESA-listed species and is not likely to jeopardize the continued existence of the remaining ESA-listed species (including the North Atlantic right whale).  *Id.*  The BiOp also concluded the South Fork Wind Project would have no effect on the critical habitat designated for the North Atlantic right whale and several other ESA-listed species.  *Id.*  The BiOp included an Incidental Take Statement pursuant to ESA Section 7(b)(4), 16 U.S.C. § 1536(b)(4), and identified the permitted take incidental to the South Fork Wind Project and enforceable mitigation measures and requirements to avoid or minimize impacts to listed species.  *Id.*

---

[16] NMFS, Endangered Species Act Section 7 Consultation Biological Opinion for the South Fork Wind Project (Oct. 1, 2021), https://media.fisheries.noaa.gov/2021-12/SFW_BiOp_OPR1.pdf.

c.    Marine Mammal Protect Act

In March 2019, South Fork Wind submitted an application to NMFS for an Incidental Harassment Authorization ("IHA") to take marine mammals incidental to construction of the South Fork Wind Project.[17]  Gearon Decl. ¶ 23.  As part of its application, South Fork Wind submitted a 129-page JASCO Applied Sciences report on Underwater Acoustic Modeling of Construction Noise and a 154-page JASCO report on Animal Exposure Modeling.  *Id.*  NMFS published a notice of the proposed IHA in the Federal Register on February 5, 2021, and accepted comments on the proposed IHA until March 10, 2021.  *Id.* ¶ 24.  NMFS issued the IHA to South Fork Wind on December 21, 2021, and the IHA was valid from November 15, 2022 through November 14, 2023.[18]  *Id.* at ¶ 25.

d.    Coastal Zone Management Act

In 2018, South Fork Wind submitted a CZMA federal consistency certification to the Rhode Island Coastal Resources Management Council ("RI CRMC"), as well as the other relevant state agencies in New York and Connecticut, for review for consistency with the states' enforceable program policies in their approved coastal management programs, in accordance with CZMA regulations at 15 C.F.R. § 930.57(a).  Gearon Decl. ¶ 26; *see also* 15 C.F.R. pt. 930, Subpart D.  Each state agency thereafter concurred in that consistency certification under 15 C.F.R. § 930.62, with RI CRMC issuing its concurrence on July 1, 2021.  Gearon Decl. ¶ 26.

e.    National Historic Preservation Act

BOEM's NHPA Section 106 consultation process for South Fork Wind began in the Spring of 2019.  Gearon Decl. ¶ 29.  On May 29, 2019, BOEM extended invitations to consult under

_____

[17] The South Fork Wind Project Construction IHA and associated material are available at https://www.fisheries.noaa.gov/action/incidental-take-authorization-south-fork-wind-llc-construction-south-fork-offshore-wind.

[18] NMFS Incidental Harassment Authorization (Dec. 21, 2021), https://media.fisheries.noaa.gov/2021-12/SFW_IHA_issued_OPR1.pdf.

NHPA Section 106 to 40 potential consulting parties. *Id.* On June 29, 2020, BOEM provided details to invitees who had responded and re-extended its invitations to those who had not. *Id.* BOEM convened five consulting party meetings between September 29, 2020 and September 30, 2021. *Id.* ¶ 30. South Fork Wind participated in every consultation meeting. *Id.*

BOEM circulated documents and analyses to consulting parties and consulted on the Area of Potential Effect and identification of historic properties.[19] *Id.* ¶ 31. BOEM circulated to consulting parties for comment its draft Finding of Adverse Effect on May 3, 2021, and its final Finding of Adverse Effect on August 16, 2021. *Id.* ¶ 32. The Finding of Adverse Effect considered historic properties in Newport, Rhode Island, including National Historic Landmark properties such as the Bellevue Avenue Historic District and the Ocean Drive Historic District, and determined that because of distance to the Project and other factors, the Project would result in no adverse effects to these properties. *Id.* ¶ 33. Each of the relevant State Historic Preservation Officers—including Rhode Island's—concurred in BOEM's Finding of Adverse Effect. *Id.* ¶ 34. On August 20, 2021, BOEM circulated its first draft of a Memorandum of Agreement ("South Fork Wind Project MOA") and twice over the following two months, BOEM released a new revised draft South Fork Wind Project MOA and incorporated feedback from the consulting parties. *Id.* ¶ 35.

The final South Fork Wind Project MOA was executed in November 2021 among BOEM, South Fork Wind, all three of the relevant State Historic Preservation Officers (including Rhode

---

[19] For a description of this process, *see* Finding of Adverse Effect for the South Fork Wind Farm and South Fork Export Cable Construction and Operations Plan (August 2021) at 4, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SFWF_FOE_FINAL_0.pdf.

Island's), and the federal Advisory Council on Historic Preservation ("Advisory Council").[20] *Id.* ¶ 36. The final South Fork Wind Project MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures "in order to take into account the effect of the undertaking on historic properties."[21] *Id.* ¶ 37.

f.   <u>Clean Water Act</u>

On December 23, 2020, South Fork Wind filed an application with USACE for a CWA Section 404 and Rivers and Harbors Act of 1899 ("RHA") Section 10 individual permit for construction of the South Fork Wind Project. *Id.* ¶ 38. On January 14, 2022, USACE issued the ROD[22] and on January 18, 2022, issued a CWA Section 404 and RHA Section 10 permit to South Fork Wind.[23] *Id.* This permit imposes numerous conditions on the Project, including with respect to mitigation and monitoring measures. *Id.*

**2.    Revolution Wind Federal Review and Approvals Processes**

Revolution Wind has invested significant resources in the extensive, multi-year planning and development process for the Revolution Wind Project, including by developing voluminous technical and scientific submissions to federal, state, and local agencies and participating in public review processes. Ingalls Decl. ¶ 11. Revolution Wind's direct involvement with Defendant BOEM goes back to July 31, 2013, when BOEM conducted a competitive lease sale for commercial leasing for wind power generation offshore Rhode Island and Massachusetts. *Id.* ¶

---

[20] *See* South Fork Wind Project MOA (Nov. 2023), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/ma-ny-ri-south-fork-moa.pdf.

[21] South Fork Wind Project MOA at 4.

[22] *See* USACE ROD, https://www.nan.usace.army.mil/Portals/37/NAN-2020-01079-EVI%20SOF%2014%20PM%20Sign.pdf.

[23] USACE Permit, https://www.nan.usace.army.mil/Portals/37/NAN-2020-01079%20South%20Fork%20Wind%20Issued%20Permit-Dated%2018%20JAN%202022_1.pdf

12. Deepwater Wind New England, LLC won the lease, and then assigned the relevant subset of that lease to what is now Revolution Wind.[24]  *Id.*

        a.      <u>Outer Continental Shelf Lands Act and National Environmental Policy Act</u>

Revolution Wind developed and submitted to BOEM a Site Assessment Plan, which BOEM approved in October 2017.  *Id.* ¶ 13.  Revolution Wind undertook extensive field surveys to understand and characterize the environment and the Revolution Wind Project site, including meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard and oceanographic surveys.  *Id.* ¶ 14.  As documented in BOEM's Finding of Adverse Effect,[25] the work for the Revolution Wind Project also included an assessment of historic properties, including a marine archeological survey, a terrestrial archeological survey, a Visual Impacts Analysis, an Historic Resources Visual Effects Analysis specific to the Revolution Wind Project, and a Cumulative Historic Resources Visual Effects Analysis.[26]  *Id.* ¶¶ 25-26.

Revolution Wind prepared and submitted to BOEM a detailed COP in March 2020, which Revolution Wind updated as the development process progressed.  *Id.* ¶ 15.  The final version is

---

[24] The Revolution Wind Project is owned by Revolution Wind.  Revolution Wind is a joint venture indirectly owned in equal part by Orsted North America Inc. and Eversource Energy.  Revolution Wind was formerly known as DWW Rev I, LLC.

[25] *See* BOEM Finding of Adverse Effect for the Revolution Wind Farm and Revolution Export Cable Construction and Operations Plan, June 2023, at 29, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/RWF_FEIS_App_J_FOE-MOA_508_compressed.pdf.

[26] *See* BOEM Cumulative Historic Analysis – Revolution Wind Farm and Revolution Wind Farm Export Cable Project, August 2022, https://www.boem.gov/sites/default/files/documents/renewable-energy/RWF_CHRVEA_redacted_508_updated.pdf.

thousands of pages long, including appendices.[27]  On April 30, 2021, BOEM issued a Notice to prepare an EIS under NEPA for its review of the COP.  *Id.* ¶ 16.

That Notice began a more than two-year period of environmental review by the federal government involving Revolution Wind, twelve federal agencies, three state and local cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry, to local communities, to American Indian tribes and historic preservation organizations.  *Id.*  BOEM published the DEIS for the Revolution Wind Project on August 29, 2022.  *Id.*  BOEM's NEPA process included extensive consultations and public involvement.  *Id.* ¶ 18.  BOEM held three public scoping meetings where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS, as well as five additional public meetings during the public comment period on the DEIS.  *Id.*  Revolution Wind attended all of the meetings and submitted comments on the DEIS.  *Id.*  BOEM published the FEIS on July 21, 2023.[28] *Id.* ¶ 16.

On August 21, 2023, BOEM issued a ROD documenting the decision to approve the COP with some modifications.  *Id.* ¶ 19.  BOEM subsequently issued the COP approval on November 17, 2023.[29]  *Id.*  Extensive additional time, effort, and financial resources were also expended to secure other required permits and approvals for the Revolution Wind Project.  *Id.* ¶ 20.

---

[27] *See* BOEM Construction & Operations Plan – Revolution Wind Farm, Vol. I, March 2023, https://www.boem.gov/renewable-energy/state-activities/revolution-wind-farm-construction-and-operations-plan.

[28] The Revolution Wind DEIS and FEIS are available under the "Environmental Review" tab at https://www.boem.gov/renewable-energy/state-activities/revolution-wind.

[29] Both the ROD and the COP for the Revolution Wind Project approval are available under the "Construction and Operations Plan" tab at https://www.boem.gov/renewable-energy/state-activities/revolution-wind.

b.    Endangered Species Act

BOEM and other cooperating agencies for the Revolution Wind Project conducted ESA

Section 7 consultation on the Project.  16 U.S.C. § 1536; Ingalls Decl. ¶ 21.  On July 21, 2023,

NMFS issued an ESA BiOp[30] that assessed the potential effects of construction, operation,

maintenance, and decommissioning of the Revolution Wind Project on ESA-listed whales, sea

turtles, fish, corals, and designated critical habitat in the Project area.  *Id.*  The BiOp concluded that

the Revolution Wind Project is not likely to affect certain ESA-listed species and is not likely to

jeopardize the continued existence of the remaining ESA-listed species (including the North Atlantic

right whale).  *Id.*  In addition, the BiOp concluded the Project would have no effect on several other

ESA-listed species and no effect on the critical habitat designated for the North Atlantic right

whale and several other ESA-listed species.  *Id.*  The BiOp included an Incidental Take Statement

pursuant to ESA Section 7(b)(4), 16 U.S.C. § 1536(b)(4), and identified the permitted take incidental

to the Revolution Wind Project and enforceable mitigation measures and requirements to avoid or

minimize impacts to listed species.

c.    Marine Mammal Protect Act

In October 2021, Revolution Wind submitted an application to NMFS for the promulgation

of a five-year Incidental Take Regulations ("ITR") and associated Letter of Authorization

("LOA") for the incidental take of small numbers of marine mammals during the construction of

the Project.  Ingalls Decl. ¶ 22.  After holding two public comment periods and considering those

comments, NMFS published its final ITR on October 20, 2023, and issued its LOA on November

---

[30] NMFS, Endangered Species Act Section 7 Consultation Biological Opinion for Revolution
Wind Project (July 21, 2023), https://www.boem.gov/sites/default/files/documents/renewable-
energy/state-activities/Rev-Wind-BiOp.pdf.

20, 2023.[31]  *Id.*  The ITR and LOA cover a period of five years, from November 20, 2023 through November 19, 2028.  *Id*. ¶ 23.  The LOA requires Revolution Wind to implement mitigation measures as well as other monitoring and reporting requirements.  *Id*.  The ITR and LOA authorize incidental take of marine mammals by harassment and do not authorize any take of marine mammals by mortality or serious injury.  *Id*.

d.    <u>Coastal Zone Management Act</u>

In June 2021, Revolution Wind submitted a CZMA federal consistency certification to the RI CRMC, as well as the relevant state agency in Massachusetts, for review for consistency with the states' enforceable program policies in their approved coastal management programs, in accordance with CZMA regulations at 15 C.F.R. § 930.57.  Ingalls Decl. ¶ 24; *see also* 15 C.F.R. pt. 930, Subpart D.  Both state agencies thereafter concurred in that consistency determination under 15 C.F.R. § 930.62, with RI CRCM issuing its concurrence on May 12, 2023.[32]  Ingalls Decl. ¶ 24.

e.    <u>National Historic Preservation Act</u>

BOEM's NHPA Section 106 consultation process began in the Spring of 2021.  *Id.* ¶ 27. Between April 2 and 30, 2021, BOEM extended invitations to consult under NHPA Section 106 to 127 potential consulting parties, and additional consulting parties were invited through the consultation process as they were identified.  *Id.*  BOEM convened five consulting party meetings between December 21, 2021 and June 7, 2023, all of which Revolution Wind participated in.  *Id.* ¶ 28.

---

[31] *See* NMFS Letter of Authorization (Oct. 20, 2023), https://www.fisheries.noaa.gov/s3/2023-11/BL52-Revolution-Wind-LOA-OPR1-Final-signed-OPR1.pdf.

[32] *See* RI CRMC CZMA Consistency Concurrence (May 12, 2023), http://www.crmc.ri.gov/windenergy/revolution/RevWind_FedConDecision_20230512.pdf.

BOEM circulated documents and analyses to consulting parties and consulted on the Area of Potential Effect and identification of historic properties.[33]  Ingalls Decl. ¶ 29.  BOEM circulated its draft Finding of Adverse Effect in August 2022 and also a draft Memorandum of Agreement ("Revolution Wind Project MOA"), both of which were refined over time with additional consulting party comments and consultation meetings.  *Id.* ¶ 30.  BOEM circulated its final Finding of Adverse Effect in June 2023.  *Id.* ¶ 31.  Each of the four relevant State Historic Preservation Officers—including Rhode Island's—concurred in BOEM's Finding of Adverse Effect or did not object.  *Id.* ¶ 34.

BOEM consulted with consulting parties on drafts of the Revolution Wind Project MOA, and made the draft Revolution Wind Project MOA available for public review and comment.  *Id.* ¶ 35. In August 2023, the final Revolution Wind Project MOA was executed among BOEM, Revolution Wind, all four of the relevant State Historic Preservation Officers (including Rhode Island's), and the federal Advisory Council.[34]  *Id.*  The final Revolution Wind Project MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures and that "[e]xecution of [the] MOA . . . and implementation of its terms evidence that BOEM has taken into account the effects of [the] undertaking on historic properties. . . ."[35]

---

[33] For a description of this process, *see* Finding of Adverse Effect for Historic Properties and Draft Memorandum of Agreement (June, 2023) at 8, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/RWF_FEIS_App_J_FOE-MOA_508_compressed.pdf.

[34] *See* Revolution Wind Project MOA (Aug. 2023), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/RevolutionWindFarm_MOA.pdf.

[35] Revolution Wind Project MOA at 5-24, 33.

f.    <u>Clean Water Act</u>

On June 3, 2022, Revolution Wind filed an application with the USACE for a CWA Section 404 and RHA Section 10 individual permit for the Revolution Wind Project. *Id*. ¶ 38. On September 2, 2022, USACE issued a public notice and request for public comment on Revolution Wind's permit application. *Id*. On August 21, 2023 USACE issued its ROD, and in October 2023 USACE issued the CWA/RHA permit to Revolution Wind. *Id*. The permit requires environmental protection measures, annual compliance reporting, coastal surveying, and imposes other conditions on Revolution Wind's activities. *Id*.

C.    **Financial Obligations and Commercial Commitments**

1.    **South Fork Wind Financial Obligations and Commercial Commitments**

To date, South Fork Wind has incurred financial obligations and commercial commitments in excess of $1 billion developing, permitting, engineering, and constructing the South Fork Wind Project. Gearon Decl. ¶¶ 8, 39-40. South Fork Wind and the Long Island Power Authority ("LIPA") executed a Power Purchase Agreement ("South Fork Wind PPA") in February 2017, with an amendment in March 2017 and second amendment in September 2020. *Id*. ¶ 7. Construction of the South Fork Wind Project is nearly complete, and the project has begun generating electricity and selling this electricity to LIPA under the terms of the PPA. *Id*. ¶¶ 6, 7. South Fork Wind expects to receive millions of dollars each month in revenue from the sale of electricity under the South Fork Wind PPA; if the South Fork Wind Project is enjoined from operating, the corresponding revenue would be reduced. *See id*. ¶ 41. Similarly, if South Fork Wind is unable to complete construction of a portion of the South Fork Wind Project, it will forego a corresponding percentage of revenue even if the remainder of the project is allowed to operate.

*Id.*  In addition, if South Fork Wind is not able to complete construction by January 1, 2025 it may be required to pay LIPA liquidated damages for a capacity shortfall.  *Id.*

### 2. Revolution Wind Financial Obligations and Commercial Commitments

To date, Revolution Wind has incurred financial obligations and commercial commitments in excess of $1 billion in developing, permitting, engineering, and preparing for and commencing construction of the Revolution Wind Project.  Ingalls Decl. ¶¶ 8, 39-40.  Revolution Wind has been awarded five Power Purchase Agreements ("PPAs") under three separate procurements, for a combined 704 MW of generating capacity: two October 2018 PPAs with the Connecticut utilities, for approximately 200 MW; a February 2019 PPA with the Rhode Island utility, for approximately 400 MW; and two November 2019 PPAs with the Connecticut utilities, for approximately 104 MW (collectively, "Revolution Wind PPAs").  *Id.* ¶ 7.  If Revolution Wind does not achieve commercial operations within the timeframe established under the Revolution Wind PPAs, Revolution Wind faces liquidated damages and potential termination.  *Id.* ¶ 40.  If the Revolution Wind PPAs were to be terminated, the value of the Project would be substantially reduced, as Revolution Wind would likely lose the great majority of its investments and expected future profits.  *Id.*

## III.  ARGUMENT

### A.  <u>South Fork Wind and Revolution Wind Are Entitled to Intervention of Right</u>

Under Rule 24(a)(2), South Fork Wind and Revolution Wind are each entitled to intervene of right in this action.  An applicant must demonstrate that it has Article III standing to intervene of right.  *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015). Once standing is established, the court then applies a four-factor test, requiring that: (1) the motion to intervene be timely; (2) the applicant claims a legally protected interest; (3) the action, as a

practical matter, impairs or impedes that interest; and (4) the potential intervenor's interest cannot adequately be represented by another party to the action. *Id*. at 320.

South Fork Wind and Revolution Wind each satisfy all requirements for intervention of right, as set forth below. Courts in this district have granted intervention of right to offshore wind project sponsors in legal challenges to their respective project approvals. *See, e.g.*, *Pres. Soc'y of Newport Cnty. v. Haaland*, No. 1:23-cv-03513-RCL, Dkt. 14 (D.D.C. Dec. 8, 2023) (J. Lamberth) (granting Revolution Wind intervention in challenge to BOEM's project approvals); *Pres. Soc'y of Newport Cnty. v. Haaland,* No. 1:23-cv-03510-APM, Minute Order (D.D.C. Dec. 12, 2023) (granting South Fork Wind intervention in challenge to BOEM's project approvals); *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-3514-APM, Minute Order (D.D.C. Dec. 6, 2023) (granting South Fork Wind intervention in challenge to BOEM's project approvals) (case later consolidated with 1:23-cv-03510-APM); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting South Fork Wind intervention in challenge to BOEM's Project approval); *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, No. 1:21-cv-03276-CRC, Minute Order (D.D.C. Jan. 19, 2022) (granting offshore wind development company's motion to intervene in challenge to BOEM's project approval); *Responsible Offshore Dev. Alliance v. U.S. Dep't of the Interior*, No. 1:22-cv-00237-CRC, Mem. Op. and Order (D.D.C. June 27, 2022) (same); *Fisheries Survival Fund v. Jewell*, No. 1:16-cv-02409 (TSC), Minute Order (D.D.C. Jan. 16, 2017) (same); *Pub. Emps. For Env't Resp. v. Bromwich*, No. 1:10-cv-01067-RBW, Minute Order (D.D.C. Sept. 8, 2010) (same).

## 1.    South Fork Wind and Revolution Wind Have Article III Standing

South Fork Wind and Revolution Wind each have standing to intervene as a defendant in this case, in which Plaintiffs challenge approvals issued to each of them for the construction and operation of their respective Projects. "The standing inquiry for an intervening-defendant is the

same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability."
*Crossroads*, 788 F.3d at 316; *see also Sierra Club v. EPA*, 292 F.3d 895, 898-99 (D.C. Cir. 2002).

South Fork Wind and Revolution Wind easily satisfy the injury in fact requirement.  In this
case, Plaintiffs challenge the legality of approvals granted by Federal Defendants to South Fork
Wind and Revolution Wind that are necessary for construction and operation of each Project,
which South Fork Wind and Revolution Wind planned, designed, funded, are building, and own,
respectively.  *See* Compl. at 90-91; Gearon Decl. ¶¶ 4, 8, 11, 39, 42; Ingalls Decl. ¶¶ 4, 8, 11, 39,
41.  The D.C. Circuit Court of Appeals has made clear that where a party's activity, product,
permit, or license "is 'an object of the [agency] action (or forgone action) at issue' . . . there should
be 'little question'" regarding the party's standing.  *Sierra Club*, 292 F.3d at 900 (quoting *Lujan
v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)); *see also Crossroads*, 788 F.3d at 317.

Furthermore, the relief Plaintiffs seek—to vacate and set aside each Project's approvals,
*see* Compl. at 90-91, which would disrupt or delay each Project's construction and operation,
would impose significant financial harms on South Fork Wind and Revolution Wind.  *See supra*
Section II.C.  For example, if the South Fork Wind Project is enjoined from operating, South Fork
Wind would lose millions of dollars in revenue each month.  Gearon Decl. ¶ 41.  If South Fork
Wind is unable to complete construction of a portion of the South Fork Wind Project in the event
its approvals are enjoined, it will forego a corresponding percentage of revenue even if the
remainder is allowed to operate.  *Id*.  South Fork Wind may be required to pay LIPA liquidated
damages for a capacity shortfall if it is not able to complete construction by January 1, 2025.  *Id*.
South Fork Wind has invested over $1 billion to date developing the Project.  *Id*. ¶ 8.  With respect
to Revolution Wind, for example, if Revolution Wind does not achieve commercial operation
within the timeframe established under its PPAs, Revolution Wind may face liquidated damages,

increased contract security requirements, and termination of the PPAs.  Ingalls Decl. ¶¶ 7, 40 (describing Revolution Wind PPAs).  Revolution Wind and its affiliates could lose billions of dollars if Plaintiffs succeed in blocking the Project.  *Id.* ¶ 41.  These economic injuries clearly constitute cognizable harm sufficient to demonstrate that South Fork Wind and Revolution Wind each have standing.  *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("Economic harm to a business clearly constitutes an injury-in-fact. . . . A dollar of economic harm is still an injury-in-fact for standing purposes.").

Moreover, this litigation threatens South Fork Wind's and Revolution Wind's substantial efforts and investments in the distinct administrative approval processes for their respective Projects.  *See supra* Sections II.B.1 & II.B.2.  Such "participat[ion] in the administrative process" that culminated in the challenged administrative action creates an interest sufficient to support intervention.  *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995).

With respect to the causation and redressability requirements for standing, South Fork Wind and Revolution Wind each necessarily satisfy these requirements because the relief Plaintiffs seek would cause them the injuries described above.  Where a plaintiff's suit challenges an agency decision that was in the applicant's favor, "it rationally follows [that] the injury is directly traceable to [plaintiffs'] challenge."  *Crossroads*, 788 F.3d at 316.  Such harm would be prevented if the relief Plaintiffs request is denied.

### 2.    This Motion Is Timely

South Fork Wind and Revolution Wind filed this motion within 21 days after Plaintiffs filed their Complaint and before any responsive pleadings have been filed.  Intervention will not cause delay, and no party will be in any way prejudiced by the requested intervention at this earliest possible stage in the proceedings.  Therefore, this motion is timely.  *See, e.g., Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (motion timely when filed less than two months

after commencement of suit); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (motion timely when filed thirty days after intervenor-defendant received notice).

### 3.    South Fork Wind and Revolution Wind Have Multiple Significantly Protectable Interests Relating to the Subjects of This Action

The existence of constitutional standing suffices to show a legally protected interest for purposes of Rule 24.  *See Crossroads*, 788 F.3d at 320 ("[S]ince [the proposed defendant-intervenor] has constitutional standing, it a fortiori has 'an interest relating to the property or transaction which is the subject of the action.'" (quoting *Fund for Animals*, 322 F.3d at 735)); *see also Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003).  As explained above, South Fork Wind and Revolution Wind each have significantly protectable interests in: (1) their respective Project's timely construction and commencement of operations authorized by the challenged permits and approvals; (2) meeting their contractual obligations for construction and operation, including under their respective PPAs; (3) the considerable time, effort, and cost they have invested in their administrative approval processes and construction of their Projects to date, and in the approvals themselves; and (4) financial obligations and potential losses in excess of a billion dollars per Project if Plaintiffs succeed in blocking or delaying either or both.  *See supra* Sections II.C & III.A.1.  For all of these reasons, South Fork Wind and Revolution Wind each satisfy the significant protectable interest requirement.

### 4.    Without Intervention, Disposition of the Action Would Impede South Fork Wind's and Revolution Wind's Ability to Protect Their Distinct Interests

To satisfy the third part of the Rule 24(a)(2) test, South Fork Wind and Revolution Wind need only show that an unfavorable disposition of this action "may as a practical matter impair or impede" their ability to protect their interests. Fed. R. Civ. P. 24(a)(2).  The D.C. Circuit interprets this language to require a court to consider the "practical consequences" of denying intervention

to the applicant, including economic consequences. *Fund for Animals*, 322 F.3d at 735. Where, as here, a movant seeks intervention to defend the validity of a government approval it has been granted, there is a clear showing that a decision in movant's absence would impair its ability to protect that interest. *See, e.g., Friends of the Headwaters v. U.S. Army Corps of Eng'rs*, Civ. No. 21-0189 (CKK), 2021 WL 1061162, at *3 (D.D.C. Mar. 20, 2021) (granting intervention of right where plaintiff's requested relief, if granted, "would as a practical matter impede" intervenor permit holder's "ability to proceed" with its project by requiring the permit holder "to halt construction and incur additional costs associated with delay").

Plaintiffs ask this Court, among other things, to vacate and set aside each Project's government approvals, including BOEM's COP approvals, NMFS's MMPA approvals, and USACE's CWA permits for the Projects. *See* Compl. at 90-91. Thus, Plaintiffs' action threaten each Project's approvals and Plaintiffs seek relief that, if granted, would impair both South Fork Wind's and Revolution Wind's ability to complete construction as planned and commence or continue operation of their respective Projects, as well as delivery of energy to the electric grid and hundreds of thousands of homes, at significant financial loss. *See* Gearon Decl. ¶¶ 39-43; Ingalls Decl. ¶¶ 39-42. South Fork Wind's and Revolution Wind's intervention in this action is thus necessary to protect each entity's significant interests in the challenged approvals authorizing their respective Projects.

### 5.    Existing Parties Will Not Adequately Represent South Fork Wind's or Revolution Wind's Interests

As the D.C. Circuit has explained, "a movant 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation.'" *Crossroads*, 788 F.3d at 321 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)). This

requirement is "not onerous" and represents a "low" threshold.  *Id.* (quoting *Fund for Animals*, 322 F.3d at 735, 736 n.7).

Although Federal Defendants—agencies that have issued approvals for the Projects' construction and operation—and South Fork Wind and Revolution Wind nominally share the same objective to defend these approvals as to their respective Projects, the broad public interest the government defends for each Project is distinct from the more specific interests of South Fork Wind or Revolution Wind.  Federal Defendants do not share South Fork Wind's or Revolution Wind's interest in meeting their respective contractual obligations and protecting their extensive financial investments in their Projects.  *See* Gearon Decl. ¶¶ 39-41; Ingalls Decl. ¶¶ 39-42.  Federal Defendants' "general interest" in seeing their decisions upheld "does not mean [the parties'] particular interests coincide so that representation by the agency alone is justified."  *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001).

In these circumstances, where an entity has committed over a billion dollars in a project and a court-imposed delay or vacatur of agency approvals could result in the project's failure or significant financial loss, courts have recognized that the government does not adequately represent the specific, narrower economic and other interests of private parties that may be affected by the litigation.  *See, e.g.*, *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (pesticide registrant's "economic and proprietary interests" not shared by EPA regulators); *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (reversing denial of intervention by rubber and chemical companies because the regulations at issue would have direct impact on their businesses and the decision would likely involve "questions of very technical detail and data").  That is particularly true when—as here—a private-party intervenor asserts a "financial stake in the outcome" of the action.

*Id.*; *see also Fund for Animals*, 322 F.3d at 736-37 & n.9 (collecting cases recognizing that "governmental entities do not adequately represent the interests of aspiring intervenors").  Federal Defendants may not be able or motivated to raise the same defenses as South Fork Wind or Revolution Wind.

Nor can either South Fork Wind or Revolution Wind represent the unique interests of the other in their respective Project.  South Fork Wind and Revolution Wind have significantly protectable interests in their own separate and distinct Projects, including different financial commitments and commercial obligations.  *See supra* Sections II.C & III.A.3 (describing contractual commitments and each Project's respective PPAs).

Thus, the existing parties are inadequate representatives of South Fork Wind's or Revolution Wind's interests in this case, and neither South Fork Wind nor Revolution Wind is an adequate representative for the other.  Given the foregoing, South Fork Wind and Revolution Wind are each entitled to intervene of right in this matter pursuant to Rule 24(a)(2).

### B.    <u>Alternatively, the Court Should Grant Permissive Intervention</u>

In the alternative, the Court should grant South Fork Wind and Revolution Wind permissive intervention because they have each met the requirements of Rule 24(b).  Under that rule, a would-be party can intervene:

> when an applicant's claim or defense and the main action have a question of law or fact in common .... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2).  In applying this discretionary standard, courts consider whether the applicant has "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

South Fork Wind and Revolution Wind each meet the standard for permissive intervention under Rule 24(b) for many of the same reasons that they are entitled to intervene of right. First, this Court has an independent basis for subject matter jurisdiction over the defenses that South Fork Wind and Revolution Wind will advance. Because Plaintiffs' claims arise under the laws of the United States—such as the APA, NEPA, ESA, MMPA, NHPA, CZMA, and MBTA—and South Fork Wind and Revolution Wind each have Article III standing, *see supra* Section III.A.1, this Court has original jurisdiction.

Second, as explained above, South Fork Wind's and Revolution Wind's motion is timely. *See supra* Section III.A.2. Intervention at this earliest stage of litigation will not delay the proceeding and South Fork Wind and Revolution Wind are prepared to meet any schedule set by this Court.

Third, in this case, Plaintiffs have challenged federal approvals for the South Fork Wind Project and Revolution Wind Project, although both Projects are distinct from one another and each will have a separate administrative record. In any event, with respect to Plaintiffs' claims against the South Fork Wind Project approvals, South Fork Wind's defenses of the challenged approvals will be determined on common facts and legal principles with the main action as it pertains to the South Fork Wind Project approvals. With respect to Plaintiffs' claims against the Revolution Wind Project approvals, Revolution Wind's defenses of the challenged approvals will be determined on common facts and legal principles with the main action as it pertains to the Revolution Wind Project approvals. Because South Fork Wind and Revolution Wind will raise defenses directly responsive to Plaintiffs' claims, they necessarily will assert claims or defenses in common with the main action and satisfy the common question of law or fact requirement for permissive intervention.

Permissive intervention is also appropriate because South Fork Wind's and Revolution Wind's participation in this case will significantly contribute to full development of the underlying factual issues in the suit. As each Project's developer, South Fork Wind and Revolution Wind were a key participant in all of the federal approval processes for their respective Projects implicated by Plaintiffs' claims in this case, and they are uniquely positioned to provide relevant information to the Court to address the merits and ramifications of Plaintiffs' arguments as to their own Projects. As a result, both South Fork Wind's and Revolution Wind's participation in this action as intervenors will promote a fair and full adjudication of Plaintiffs' claims for the two Projects.

**C.    South Fork Wind and Revolution Wind Should Be Permitted to File Their Answers by the Same Deadline as Federal Defendants**

South Fork Wind and Revolution Wind respectfully seek leave to file their Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Rule 7(j) by the same deadline as Federal Defendants, or three days after intervention is granted, whichever is later. South Fork Wind's and Revolution Wind's Motion informs the Court and the parties of the nature and basis for their respective needs to participate in this case, such that the Court may adequately evaluate the issues and grant South Fork Wind and Revolution Wind intervention without a corresponding pleading. Deferring the deadline for South Fork Wind's and Revolution Wind's recitation of defenses in an Answer, or other responsive pleading, to align with Federal Defendants' deadlines will further judicial economy by not prematurely requiring such filings until Federal Defendants are also required to file. Courts have granted such requests frequently. *See, e.g., Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13, 2020) (J. Lamberth) (granting motion to intervene and to defer filing responsive pleading under Rule 24(c) to same date as federal defendant); *Nat'l Tr. for Historic Pres. v. Semonite*, No. 1:17-cv-01574-RCL, Dkt.

29

24 (D.D.C. Sept. 12, 2017) (J. Lamberth) (granting intervention and allowing intervenor's answer to later be filed on same date as federal defendants' answer); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting South Fork Wind intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants); *Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK-JBD, Dkt. 18 (D.N.J. May 19, 2023) (granting Ørsted intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants). Granting this request will not cause any delay in this litigation, as Federal Defendants have not yet filed their own responsive pleading.

## IV.    CONCLUSION

For the foregoing reasons, South Fork Wind and Revolution Wind respectfully request that the Court grant their motion to intervene of right or, in the alternative, to grant permissive intervention, and that South Fork Wind and Revolution Wind be permitted to file their responsive pleading under Rule 24(c) on the same date as Federal Defendants' deadline for responding to Plaintiffs' Complaint or three days after intervention is granted, whichever is later.

Dated:  February 6, 2024                    Respectfully submitted,


By */s/* Janice M. Schneider

  Janice M. Schneider (D.C. Bar No. 472037)
  Stacey L. VanBelleghem (D.C. Bar No. 988144)
  Devin M. O'Connor (D.C. Bar No. 1015632)
  LATHAM & WATKINS LLP
  555 11th Street NW, Suite 1000
  Washington, D.C. 20004
  Tel:  (202) 637-2200
  Fax:  (202) 637-2201
  Email: janice.schneider@lw.com
     stacey.vanbelleghem@lw.com
     devin.o'connor@lw.com

  *Counsel for Proposed Defendant-Intervenors*
  *South Fork Wind, LLC and Revolution Wind, LLC*