IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREEN OCEANS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>*Defendants,*<br><br>and<br><br>SOUTH FORK WIND, LLC & REVOLUTION WIND, LLC,<br><br>*Proposed Defendant-Intervenors* | Case No.: 1:24-cv-00141-RCL |

**DECLARATION OF MELANIE GEARON IN SUPPORT OF
SOUTH FORK WIND, LLC'S INTERVENTION AS A DEFENDANT**

Pursuant to 28 U.S.C. § 1746(2), I, Melanie Gearon, hereby declare:

1. I am employed by Orsted North America Inc. ("Ørsted") as the Head of Northeast Permitting, including for the commercial-scale South Fork Wind Farm and South Fork Export Cable (together, the "Project"). I have been employed at Ørsted as the Head of Northeast Permitting since March 2022, and I served as the Project's Manager of Permitting and Environmental Affairs since 2017 (first as an employee of Deepwater Wind and after the acquisition of Deepwater Wind by Ørsted). Collectively I have worked on the Project for approximately six years and I have over 16 years of professional experience in the environmental science, impact assessment, and offshore permitting fields. Ørsted and its affiliate companies develop, construct, and operate offshore and onshore wind farms, solar farms, energy storage facilities, and bioenergy plants, and provide energy products to their customers. I obtained my

1

Bachelor of Science in Marine Science and Biology from Southampton College of Long Island University and a Master of Science in Fisheries Science from the University of Rhode Island.

2. The Project is contributing to both the federal government's and New York State's carbon reduction goals.

3. The Project is already supplying renewable energy and jobs to New York State, and is also providing significant economic benefits and job creation in Rhode Island[1] and Connecticut. Overall, the Project will have created more than 1,200 full-time equivalent jobs (direct, indirect, and induced effects of the Project) during Project construction, and will create an estimated 47 to 96 full-time equivalent jobs annually for the Project's operations and maintenance work.

4. The Project is owned by South Fork Wind, LLC ("South Fork Wind"). South Fork Wind is a joint venture indirectly owned in equal part by Ørsted and Eversource Energy. South Fork Wind was formerly known as Deepwater Wind South Fork, LLC. South Fork Wind and its affiliates worked to obtain the Bureau of Ocean Energy Management ("BOEM") lease at issue and to develop the Project for over ten years.

5. After nearly two years of construction activity, the Project is nearly completed and will soon be fully operational. Once completed, the Project will consist of 12 wind turbine generators ("WTGs") forming an approximately 130-megawatt ("MW") commercial-scale offshore wind energy facility within Lease Area OCS-A 0517 of the Rhode Island-Massachusetts Wind Energy Area, which is located in the Atlantic Ocean approximately 19 miles southeast of Block Island, Rhode Island, and approximately 25 miles from Newport, Rhode Island, on the Outer Continental Shelf ("OCS") in federal waters. As of this writing, 10 of the 12 WTGs have already been installed.

---

[1] *See* https://www.nytimes.com/2023/02/22/nyregion/new-york-wind-farm-rhode-island.html.

6. The Project has kept the public aware of construction activities, including through a website and listserv.[2] Construction began in early 2022. All onshore work is done, including installation of the South Fork Export Cable to connect the South Fork Wind Farm to the mainland electric grid at a substation in East Hampton, New York, for the delivery of power to the South Fork of Long Island. The export cable offshore is installed, as is the offshore substation and the inter-array cables between the turbines on the lease area. All turbine foundations are also already installed, as are 10 of the 12 WTGs. Work to complete installation and testing of the remaining WTGs will be completed in the coming weeks. While construction is nearly complete, the Project has already begun supplying power to the New York electrical grid. Once fully operational, the Project will produce enough clean energy to power approximately 70,000 homes and businesses on Long Island.

7. In response to a competitive request for proposals, South Fork Wind and the Long Island Power Authority ("LIPA") executed a Power Purchase Agreement ("PPA") in February 2017, with an amendment in March 2017, and a second amendment in September 2020. The South Fork Wind Project has begun generating electricity and selling this electricity to LIPA under the terms of the PPA.

8. To date, South Fork Wind has incurred substantial financial obligations developing, permitting, engineering, procuring, fabricating, and preparing for and constructing the Project. South Fork Wind has invested over $1 billion to date developing the Project.

9. As Ørsted's Head of Northeast Permitting, I am and have been involved in and aware of negotiation and management of commercial and real estate agreements, local, state, and federal permitting, stakeholder and market affairs management, cable and interconnection facility

---

[2] https://southforkwind.com/news.

siting, project layout and design, and site investigation activities for the Project. I am therefore personally familiar with South Fork Wind's environmental permitting and development history. I execute this Declaration in support of South Fork Wind's intervention in the case based on my personal knowledge of the matters referred to herein and, if called upon to do so, could and would testify truthfully thereto.

10. South Fork Wind seeks to intervene in this action to protect its significantly protectable interests in the Project.

***South Fork Wind's development process has spanned ten years.***

11. South Fork Wind has invested significant resources in the extensive, multi-year planning and development process for the Project, including through the development of voluminous technical and scientific submissions to federal, state, and municipal agencies and participating in public consultation and review processes, and to construct the nearly completed Project.

12. On July 31, 2013, BOEM conducted a competitive lease sale for commercial leasing for wind power on the OCS offshore Rhode Island and Massachusetts after conducting a thorough environmental review and issuing an environmental assessment. The lease areas offered in this competitive sale process were the result of an extended public planning process, including consultation under National Historic Preservation Act ("NHPA") Section 106 regarding the issuance of the commercial lease and approval of site assessment activities. Deepwater Wind New England, LLC ("DWNE") won lease OCS-A 0486. DWNE segregated 13,700 acres of the area covered by lease OCS-A 0486, resulting in lease OCS-A 0517, which was assigned to South Fork Wind for development of the Project.

13. South Fork Wind submitted a Site Assessment Plan ("SAP") as required by BOEM

regulations to conduct site assessment activities in the Project lease area and BOEM issued its final approval for the SAP on October 12, 2017.[3]

14. South Fork Wind and its affiliates conducted extensive surveys of the Project area pursuant to the approved SAP to understand and characterize the environment and the Project site. These included meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard, and oceanographic surveys.

15. In June 2018, South Fork Wind submitted a detailed Construction and Operations Plan ("COP") to BOEM, describing the planned facilities and construction and operation activities for the Project. South Fork Wind also updated the COP to include updated technical information. The final version of the COP[4] is thousands of pages long, including appendices.[5]

16. On October 19, 2018, BOEM issued a Notice of Intent ("Notice") to prepare an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA") for its review of the Project COP. That Notice began a three and a half-year period of environmental review by the federal government involving South Fork Wind, ten federal agencies, five state and local cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry, to local communities, to American Indian tribes and historic preservation organizations. The draft EIS ("DEIS") was published on January 4, 2021, and after accepting and responding to public comments, BOEM published the final EIS ("FEIS") on August 16, 2021.[6]

17. Appendix A to the FEIS describes the extensive consultations and public

---

[3] https://www.boem.gov/sites/default/files/renewable-energy-program/State-Activities/RI/SIGNED_BOEM-to-DWW_SAP-Approval-for-OCS-A-0486_101217-%281%29.pdf.
[4] https://www.boem.gov/sites/default/files/documents/renewable-energy/South-Fork-Construction-Operations-Plan.pdf.
[5] https://www.boem.gov/renewable-energy/state-activities/volume-ii-appendices.
[6] The DEIS and FEIS are available under the "Environmental Review" tab at https://www.boem.gov/renewable-energy/state-activities/south-fork.

5

involvement BOEM undertook in the process of its NEPA review, as well as the more than 20 required federal, state, and local permits, consultations and approvals required for the Project.

18. BOEM's NEPA process included three public scoping meetings where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS. BOEM held an additional three public meetings on the DEIS. South Fork Wind attended all of the meetings. South Fork Wind also submitted comments in the NEPA process.

19. On November 24, 2021, BOEM issued a Record of Decision ("ROD") documenting the Department of the Interior's decision to approve the COP with some modifications. BOEM subsequently issued the COP approval for the Project on January 18, 2022.[7]

20. South Fork Wind also engaged with state and local entities to obtain the requisite approvals for aspects of the Project under state jurisdiction. Among other things, the New York State Public Service Commission unanimously approved a Certificate of Environmental Compatibility and Public Need under Article VII of New York's Public Service Law for the onshore components of the Project after a nearly three-year long environmental review process that involved extensive negotiations with state agencies and other stakeholders and interested parties.[8]

21. Extensive additional time, effort, and financial resources were also expended to secure other required permits and approvals for the Project.

22. BOEM and other cooperating agencies conducted Endangered Species Act ("ESA")

---

[7] Both the ROD and the COP approval are available under the "Construction and Operations Plan" tab at https://www.boem.gov/renewable-energy/state-activities/south-fork.

[8] The State of New York Public Service Commission's March 18, 2021 order adopting the joint proposal is available at
https://documents.dps.ny.gov/public/Common/ViewDoc.aspx?DocRefId={E369B093-EA8F-4BC2-98BA-4EAAC97F40AB}

Section 7 consultation on the Project.  16 U.S.C. § 1536.  On January 8, 2021, BOEM submitted draft Biological Assessments to the National Marine Fisheries Service ("NMFS") and U.S. Fish and Wildlife Service.[9]  On October 1, 2021, NMFS issued a Biological Opinion ("BiOp") that assessed the potential effects of construction, operation, maintenance, and decommissioning of the Project on ESA-listed whales, sea turtles, fish, corals, and designated critical habitat in the project area.[10]  The BiOp concluded the South Fork Wind Project is not likely to adversely affect certain ESA-listed species and is not likely to jeopardize the continued existence of the remaining ESA-listed species (including the North Atlantic right whale).[11]  In addition, the BiOp concluded the Project would have no effect on the critical habitat designated for the North Atlantic right whale and several other ESA-listed species.[12]  The BiOp included an Incidental Take Statement pursuant to ESA Section 7(b)(4), 16 U.S.C. § 1536(b)(4), and identified the permitted take incidental to the South Fork Wind Project and identified enforceable mitigation measures and requirements to minimize impacts to listed species.[13]

23.    On March 15, 2019, South Fork Wind submitted a request to NMFS for an Incidental Harassment Authorization ("IHA") to take marine mammals incidental to the construction of the South Fork Wind Project.[14]  The application included a 129-page JASCO Applied Sciences report on Underwater Acoustic Modeling of Construction Noise from February 2020,[15] and a 154-page

---

[9] FEIS Appendix A at A-7.
[10] NMFS Biological Opinion, https://media.fisheries.noaa.gov/2021-12/SFW_BiOp_OPR1.pdf.
[11] *Id*. at 406.
[12] *Id*.
[13] *Id*. at Section 11 (Incidental Take Statement).
[14] The South Fork Wind Project Construction IHA and associated material are available on NOAA's website at https://www.fisheries.noaa.gov/action/incidental-take-authorization-south-fork-wind-llc-construction-south-fork-offshore-wind.
[15] JASCO Applied Sciences, *Turbine Foundation and Cable Installation at South Fork Wind Farm,* https://media.fisheries.noaa.gov/2021-02/App%20J1_SFWF_Underwater%20Acoustic%20Modeling_2020-02-05_OPR1.pdf.

JASCO Applied Sciences report on Animal Exposure Modeling from July 2020.[16]

24. NMFS deemed South Fork Wind's IHA application adequate and complete on December 16, 2020, and NMFS published a notice of the proposed IHA in the Federal Register on February 5, 2021. NMFS then accepted comments on the proposed IHA until March 10, 2021.[17]

25. On December 21, 2021, NMFS issued the final IHA for the South Fork Wind Project,[18] which included a Negligible Impact Analysis and Determination that based on "the planned activity (including the required mitigation and monitoring measures) . . . small numbers of marine mammals will be taken relative to the population size of all affected species or stocks."[19] The IHA was valid from November 15, 2022 through November 14, 2023. The IHA contains over 27 pages of conditions, mitigation measures, and monitoring and reporting requirements with respect to the governed activities, including specific mitigation measures for: (1) impact pile driving of foundation monopiles; (2) pile driving at the horizontal direction drilling site; (3) construction surveys using specified high-resolution geophysical acoustic sources; and (4) vessel strike avoidance.

26. In 2018, South Fork Wind submitted consistency certifications to the States of New York, Rhode Island, and Massachusetts under the Coastal Zone Management Act, 16 U.S.C. § 1451. In 2021, the New York Department of State, Division of Coastal Resources, Rhode Island Coastal Resources Management Council ("RI CRMC"), and Massachusetts Office of Coastal Zone

---

[16] JASCO Applied Sciences, *Foundation Installation at South Fork Wind Farm: Animal Exposure Modeling*, https://media.fisheries.noaa.gov/2021-02/July2020_App%20P2_SFWF_Animal%20Exposure%20Modeling%20Report_OPR1.pdf.
[17] NMFS Notice of Proposed IHA, https://www.federalregister.gov/documents/2021/02/05/2021-02263/takes-of-marine-mammals-incidental-to-specified-activities-taking-marine-mammals-incidental-to.
[18] NMFS IHA, https://media.fisheries.noaa.gov/2021-12/SFW_IHA_issued_OPR1.pdf.
[19] 87 Fed. Reg. 806 (Jan. 6, 2022), https://www.federalregister.gov/documents/2022/01/06/2022-00041/takes-of-marine-mammals-incidental-to-specified-activities-taking-marine-mammals-incidental-to.

Management concurred with South Fork Wind's consistency certification, finding the South Fork Wind Project consistent, to the maximum extent practicable, with each state's approved coastal management program.[20] With respect to Rhode Island, RI CRMC issued its concurrence on July 1, 2021 (following more than two and a half years of review, two publicly-noticed meetings before the RI CRMC, and dozens of meetings with RI CRMC staff, many of which also included the Rhode Island Fisherman's Advisory Board), on the condition—among others—that the South Fork Wind Farm includes no more than 12 WTGs, and the Project has met that condition.[21]

27. South Fork Wind retained qualified marine archaeologists, Gray & Pape, Inc., to conduct an extensive marine archaeological assessment and produce a Marine Archaeological Resource Assessment Report (2020) for the Project. South Fork Wind also hired Environmental Design & Research, Landscape Architecture, Engineering & Environmental Services, D.P.C., an experienced historic preservation consulting firm, to perform additional surveys and analyses, including reports titled:

    a. "Historic Architectural Resources Survey: South Fork Export Cable Onshore Substation" (2018);

    b. "Archaeological Assessment: Operations and Maintenance Facilities – South Fork Wind Farm Rhode Island & New York" (2019);

    c. "Phase I Archaeological Survey: South Fork Export Cable – Onshore Cable & Substation" (2019);

    d. "Historic Resources Visual Effects Analysis Operations and Maintenance Facilities South Fork Wind Farm Rhode Island & New York, US" (2019);

---

[20] FEIS Appendix A at A-6 – A-7.
[21] http://www.crmc.ri.gov/windenergy/dwsouthfork/SFWF_FedConsistencyDecision_20210701.pdf.

  e. "Phase IB Archaeological Survey: South Fork Export Cable: Beach Lane – Route A" (2020);

  f. "South Fork Wind Farm Cumulative Visual Simulations" (2020);

  g. "Visual Impact Assessment. Revised. South Fork Wind Farm New York/Rhode Island, US" (2020); and

  h. "Historic Resources Visual Effects Analysis. Revised. South Fork Wind Farm New York/Rhode Island, US" (2021) ("HRVEA").

28. In addition, BOEM retained SWCA Environmental Consultants to prepare a "Cumulative Historic Resources Visual Effects Analysis – South Fork Wind Farm and South Fork Export Cable Project" (2020) (the "CHRVEA")[22] and revised "Cumulative Historic Resources Visual Effects Analysis – South Fork Wind Farm and South Fork Export Cable Project" in April 2021.

29. BOEM's NHPA Section 106 consultation process began in the Spring of 2019. On May 29, 2019, BOEM extended invitations to consult under NHPA Section 106 to 40 potential consulting parties. On June 29, 2020, BOEM provided details to invitees who had responded and re-extended its invitations to those who had not.

30. BOEM convened five consulting party meetings on September 29, 2020; March 11, 2021; June 29, 2021; August 31, 2021; and September 30, 2021. South Fork Wind participated in every consultation meeting.

31. BOEM circulated documents and analyses to consulting parties and consulted on the Area of Potential Effect ("APE") for the Project and identification of historic properties in 2019 and 2020.

---

[22] The CHRVEA is available under the "Environmental Review" tab at https://www.boem.gov/renewable-energy/state-activities/south-fork.

32. BOEM circulated a draft Finding of Adverse Effect ("FoAE") on May 3, 2021, and a final FoAE on August 16, 2021.[23] The FoAE discussed the process that was used to identify historic properties in the Project's APE, including properties in the "viewshed" from which renewable energy structures might potentially be visible, whether located onshore or offshore (the "Viewshed APE"). The FoAE noted that "offshore wind energy projects of typical magnitude would have minimal visual effects at a distance of 20 miles and negligible effects beyond 25 miles." Accordingly, BOEM determined that the Project would have adverse visual effects on seven historic properties on Block Island, including the Block Island Southeast Lighthouse National Historic Landmark ("NHL"), Old Harbor Historic District, Spring House Hotel, Spring House Hotel Cottage, Spring Street Historic District, Capt. Mark L. Potter House, and Vaill Cottage, and on three properties on Martha's Vineyard.

33. The FoAE also assessed visual impacts to five other historic properties on mainland Rhode Island, all located 25 to 26 miles from the nearest Project WTG—the Breakers NHL, Marble House NHL, Bellevue Avenue Historic District NHL, Ocean Road Historic District NHL, and Ocean Drive Historic District. The FoAE stated that while the size and siting of these historic properties may afford some view toward the Project lease area, other existing buildings, vegetation, and elements of the built environment at each result in limited, screened views and existing nighttime light sources in the vicinity of these properties would minimize the visual impact posed by the Project WTGs. Further, because these properties are between 25 and 26 miles from the nearest Project WTG, the FoAE found that visibility would be minimized by fog, haze, sea spray, wave height, and normal viewer acuity. Therefore, the FoAE determined that the Project would result in no adverse effects to these NHLs on mainland Rhode Island, stating that "[t]he

---

[23] The FoAE is available at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SFWF_FOE_FINAL_0.pdf.

ability of these historic properties to convey the significance of their architectural and social history would be unaltered by the Project."

34.     Each of the relevant State Historic Preservation Officers ("SHPOs")—including Rhode Island's—concurred in BOEM's FoAE.

35.     On August 20, 2021, BOEM circulated a draft Memorandum of Agreement ("MOA") to consulting parties and specifically requested "all the parties to provide recommendations regarding additional avoidance, minimization, and mitigation measures for resolving the potential adverse effects to the NHL." The fourth consulting party meeting, on August 31, 2021, included discussion of the draft MOA. With the benefit of the consulting parties' feedback, BOEM distributed a revised MOA on September 27, 2021. On September 30, 2021, BOEM convened a fifth consulting party meeting for continued discussion of the MOA. BOEM addressed the consulting parties' additional feedback and distributed a second revised MOA on October 20, 2021.

36.     After another consultation period, BOEM produced and signed a final MOA on November 11, 2021, which was agreed to and executed by BOEM, South Fork Wind, the Rhode Island SHPO, the New York SHPO, the Massachusetts SHPO, and the Advisory Council by November 23, 2021.[24]

37.     The final MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures, "in order to take into account the effects of the undertaking on historic properties."[25] Specifically, to minimize adverse impacts to historic properties, including NHLs, the MOA required that BOEM include mitigation measures as

---

[24] The MOA is available at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/ma-ny-ri-south-fork-moa.pdf.
[25] MOA at 4.

conditions of approval for the Project COP, including: (1) uniform WTG design, speed, height, and rotor diameter to reduce visual contrast and clutter; (2) limiting the number of WTGs to no more than 12 (down from the originally proposed 15 WTGs); (3) requirements that South Fork Wind color the WTGs an off white/gray color before operation to reduce daytime visual contrast; (4) requiring uniform WTG spacing to decrease visual clutter; and (5) requiring South Fork Wind to use an aircraft detection lighting system to limit the time in which WTG lights are on and visible from affected properties, reducing nighttime lighting to less than 1% of the time that standard aircraft warning lights would be lit during Project operation.  The MOA also establishes a specific "substantive baseline" of mitigation measures for each adversely affected property and provided for the development of Historic Property Treatment Plans to "provide the details and specifications for actions, consisting of or at least equivalent to" the MOA substantive baseline mitigation measures.[26]  The MOA states that the required mitigation measures, as well as the established distance of the Project to the NHLs, would avoid adverse effects to the NHLs.  In executing the MOA, all three SHPOs and the Advisory Council agreed this was sufficient to resolve adverse effects.

38.     On December 23, 2020, South Fork Wind filed an application with the U.S. Army Corps of Engineers ("USACE") for a Clean Water Act Section 404 and Rivers and Harbors Act of 1899 Section 10 individual permit for the South Fork Wind Project.  In January 2021, USACE issued a public notice requesting comment on the proposed permit.  On January 14, 2022, USACE approved the Record of Decision,[27] and then issued the permit to South Fork Wind on January 22, 2022.[28]  This permit includes numerous conditions applicable to the Project, including with respect

---

[26] *Id.* at 6.
[27] https://www.nan.usace.army.mil/Portals/37/NAN-2020-01079-EVI%20SOF%2014%20PM%20Sign.pdf.
[28] https://www.nan.usace.army.mil/Portals/37/NAN-2020-

13

to mitigation and monitoring measures.

***Potential impairment of South Fork Wind's significant interests in the Project approvals.***

39. South Fork Wind has invested over $1 billion to date to plan, permit, develop, and construct this Project.

40. South Fork Wind entered into numerous contracts for the manufacture, transport, and installation of Project components in order to commence and complete construction in early 2024, and has taken other steps in reliance on the approvals challenged here. South Fork Wind's substantial financial and schedule obligations under these contracts would be adversely impacted if the Project were delayed or its approvals were vacated by this lawsuit.

41. As just one example, if the Project is enjoined from operating, South Fork Wind would lose millions of dollars in revenue each month. Similarly, if South Fork Wind is unable to complete construction of the Project, it will forego the percentage of revenue corresponding to the uncompleted portion even if the remainder of the Project is allowed to operate. In addition, if South Fork Wind is not able to complete construction by January 1, 2025 it may be required to pay LIPA liquidated damages for a capacity shortfall.

42. As the Project developer, OCS lessee, holder of multiple state and federal permits, and owner of real estate rights from governmental and private entities, South Fork Wind seeks to protect its significant financial investments to construct and operate the Project as well as its significant investment of time in the administrative processes supporting the challenged approvals.

43. As a result of its substantial investments in the Project and the related governmental approvals, South Fork Wind has a significant legally protectable interest in preserving and defending the approvals that Plaintiffs have challenged in this case, which would be impaired if it

---

01079%20South%20Fork%20Wind%20Issued%20Permit-Dated%2018%20JAN%202022_1.pdf.

were not permitted to intervene.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 5, 2024.

                                                          */s/ Melanie Gearon*
                                                          Melanie Gearon