UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREEN OCEANS, *et al.*,

    *Plaintiffs,*

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,

    *Defendants,*
and

REVOLUTION WIND, LLC,

    *Defendant-Intervenor.*

Case No. 1:24-cv-00141-RCL

**MEMORANDUM AND ORDER**

    This case involves a challenge to federal approvals for an offshore wind project located off the coast of Rhode Island. Plaintiffs challenge Federal Defendants' approvals associated with the Revolution Wind Farm and Revolution Wind Export Cable Project, which is being developed by defendant-intervenor Revolution Wind, LLC. Plaintiffs filed their complaint in January 2024. On April 18, they filed a motion asserting that Federal Defendants had withdrawn the Biological Opinion on which approval for the Project was based but that Revolution Wind was about to begin pile driving on May 1 despite lacking the requisite approvals from the federal government. Plaintiffs have therefore asked the Court to stay the federal agency approvals for the Project and enjoin Revolution Wind from any further construction work. Federal Defendants and Revolution Wind strenuously reject plaintiffs' characterization and present various arguments for why plaintiffs are not entitled to a stay. In addition, Climate Action Rhode Island has moved for leave

1

to file an amicus curiae brief in opposition to plaintiffs' motion to stay in order to assist the Court in understanding the effect of a stay on the public interest.  *See* Amicus Mot., ECF No. 31.

However, plaintiffs' motion fails for a simple reason: plaintiffs did not bother to meet and confer with their opponents before filing this nondispositive motion, as required by Local Civil Rule 7(m).  The Court will therefore **DENY** plaintiffs' motion to stay.  And since the Court will deny plaintiffs' motion without reaching the question of whether a stay is warranted, Climate Action Rhode Island's motion is **DENIED AS MOOT.**

## I.  BACKGROUND

The Revolution Project is a wind energy project located off the coast of Rhode Island.  The Bureau of Ocean Energy Management and other federal agencies approved the Project on August 21, 2023.  Compl. ¶ 62, ECF No. 1.  This approval rested on a Biological Opinion for the project issued on July 21, 2023 by the National Marine Fisheries Service (NMFS), which determined that the project would not jeopardize any species protected by the Endangered Species Act.  *Id.* ¶ 60.  On September 15, 2023, NMFS issued its final Incidental Take Regulations, which authorized the take of numerous species.  *Id.* ¶ 166.  Plaintiffs commenced this action in January 2024, challenging federal approvals relating to the Revolution Project.[1]  Plaintiffs allege violations of the Administrative Procedure Act, the National Environmental Policy Act, the Endangered Species Act, the Marine Mammal Protection Act, the Migratory Bird Treaty Act, the Coastal Zone Management Act, and the National Historic Preservation Act.  *See id.* ¶¶ 72–216.

On March 12, 2024, NMFS-Greater Atlantic Regional Fisheries Office (GARFO) issued a letter reinitiating formal consultation for the Project pursuant to section 7 of the Endangered

---

[1] Plaintiffs also challenged federal approvals concerning another offshore wind project, the South Fork Wind Farm and South Fork Export Cable Project.  But the Court has severed all proceedings relating to the South Fork Project.  ECF No. 25.  In the same Order, the Court granted Revolution Wind's motion to intervene.

Species Act, in response to a request from BOEM and another from the NMFS Office of Protected Resources (OPR). *See* NMFS Letter, Ex. 1 to Stay Mot., ECF No. 26-3. The letter stated that pursuant to 50 C.F.R. § 402.16(a)(2)-(3), "BOEM and NMFS OPR have separately determined that reinitiation of consultation is necessary to consider changes to the proposed actions that may affect listed species in a manner or to an extent not considered in our July 2023 Biological Opinion as well as the availability of new information that reveals effects of the action that may affect listed species in a manner or to an extent not previously considered." *Id.* at 1. Specifically, the letter noted that BOEM had proposed, based on new information about the effectiveness of nighttime monitoring for sea turtles, modifying the size of the zones within which the presence of turtles would require halting pile driving and that NMFS OPR had authorized, based on new information, the take of additional fin and sei whales. *Id.*

The letter also noted that the reinitiation would result in a new, superseding Biological Opinion. *Id.* at 2. NMFS-GARFO explained it was "working to complete the consultation by April 30, 2024, so that it is available before the seasonal window for pile driving opens on May 1." *Id.* However, the letter also stated that "no foundation installation activities for the Revolution Wind project will occur before this reinitiated consultation is completed with issuance of a new superseding final Biological Opinion." *Id.* And it noted that "pursuant to section 7(d) of the ESA, the action agencies and Revolution Wind must not make any irreversible or irretrievable commitment of resources that would foreclose the formulation or implementation of any reasonable and prudent alternatives to avoid jeopardizing endangered or threatened species." *Id.*[2]

---

[2] "After initiation of consultation required under subsection [16 U.S.C. § 1536(a)(2)], the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section." 16 U.S.C. § 1536(d).

On April 18, plaintiffs moved for a stay of agency action under 5 U.S.C. § 705. Plaintiffs asked the Court to stay the effective dates of (1) the approvals and authorizations in the August 21, 2023 Record of Decision for the Revolution Wind Project and (2) the Incidental Take Regulation approved by the NMFS. Stay Mot. 1, ECF No. 26. They also asked the Court to enjoin Revolution Wind "from beginning or performing any pile driving or other construction work or making any other irretrievable commitment of resources purportedly authorized by the August 21, 2023 Record of Decision or the October 20, 2023 Incidental Take Regulation." *Id.* at 1–2.

The Court ordered Federal Defendants and Revolution Wind to respond to the motion to stay by April 25. On that day Federal Defendants filed an opposition, Fed. Defs.' Opp'n, ECF No. 28, and Revolution Wind filed an opposition, Revolution Wind Opp'n, ECF No. 29, and a set of objections to plaintiffs' memorandum and accompanying declarations, Revolution Wind Objections, ECF No. 30. On April 26, Climate Action Rhode Island moved for leave to file an amicus curiae brief in opposition to plaintiffs' motion to stay. *See* Amicus Mot.

## II.   LEGAL STANDARDS

Civil Rule 7(m) of the Local Rules for the United States District Court for the District of Columbia reads:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. The duty to confer also applies to non-incarcerated parties appearing pro se. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

LCvR 7(m). When a nondispositive motion is at issue, the Local Civil Rule "therefore imposes twin duties of consultation and certification." *Steele v. United States*, No. 1:14-cv-1523 (RCL), 2023 WL 6215790, at *3 (D.D.C. Sept. 25, 2023). The rule's purposes are "to encourage informal

4

resolution to such disputes, or at least to reduce or narrow the issues the Court will consider." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006).

The threshold question for Local Civil Rule 7(m) is whether the motion in question is "nondispositive." The D.C. Circuit has defined "dispositive motion" to "include[] a motion that, if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997).

If the motion is nondispositive, the next issue is the duty to confer. "The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation." *Pogue*, 235 F.R.D. at 529. That means that the Local Rule "at least 'contemplates that counsel will speak to each other.'" *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006) (quoting *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003)), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008). A party must therefore take "real steps" to confer with its opponent, such as contacting the other side's counsel "by telephone or within a reasonable period prior to filing the motion." *Id.* at 52. But just conferring is not enough: the party must also certify whether it has done so and whether the motion is opposed. LCvR 7(m).

If Local Civil 7(m) has been violated, that raises the question of remedy. As the Court has explained, "[t]his Court has often denied motions for failure to comply with Rule 7(m) and its precursors" although "[u]nder the right circumstances, however, a nonconforming motion will not be denied." *Steele*, 2023 WL 6215790, at *3–4 (collecting cases). "Therefore, when a party has failed to respect the requirements of Local Rule 7(m), the Court will exercise its discretion in selecting the remedy, bearing in mind the purposes of the rule." *Id.* at *4.

5

### III.    DISCUSSION

The Court will deny plaintiffs' motion for plaintiffs' violations of Local Civil Rule 7(m).

Plaintiffs' motion to stay is nondispositive, and therefore subject to Local Civil Rule 7(m), because it is not a motion that "if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart*, 112 F.3d at 1215. And there is no reason to think that motions to stay agency actions are not subject to Local Civil Rule 7(m). The text refers to "*any* nondispositive motion in a civil action." LCvR 7(m). And courts, including this one, have applied Local Rule 7(m) to deny motions seeking emergency relief. *See, e.g.*, *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) (Lamberth, J.); *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 24 (D.D.C. 2018); *Baumann v. District of Columbia*, 655 F. Supp. 2d 1, 17 (D.D.C. 2009). Local Civil Rule 7(m) therefore applies, and in filing this motion plaintiffs had "twin duties of consultation and certification." *Steele*, 2023 WL 6215790, at *3.

Plaintiffs did not satisfy their duty to meet and confer because they did not take real steps to discuss their motion with counsel for either Federal Defendants or Revolution Wind. *See* Fed. Defs.' Opp'n 1 n.1; Revolution Wind Opp'n 14 n.8. It is also apparent that plaintiffs did not attempt "a good faith effort to resolve" this nondispositive dispute. *Pogue*, 235 F.R.D. at 529. On April 17, Federal Defendants' counsel told plaintiffs' counsel that under BOEM's Conditions of Construction and Operations Plan Approval, "pile-driving shall not commence until the reinitiated ESA consultation has been completed." Ex. 1 to Fed. Defs.' Opp'n, ECF No. 28-1. According to Federal Defendants, plaintiffs did not express any further concern; instead, without any warning, the very next day they filed their motion. Fed. Defs.' Opp'n 1 n1. Plaintiffs also violated their duty to certify their compliance with Local Civil Rule 7(m), as their motion does not include a statement that consultation has occurred.

Plaintiffs' breach of Local Civil Rule 7(m) brings the Court to the question of remedy. This is a paradigmatic case for denying a motion on the basis of Local Civil Rule 7(m). Had plaintiffs conferred with their opponents as required, the ensuring discussions would likely have "encourage[d] informal resolution to" their dispute, "or at least . . . reduce[d] or narrow[ed] the issues the Court will consider." *Pogue*, 235 F.R.D. at 529. The premise for plaintiffs' motion is that Revolution Wind intends to move forward with pile driving without first receiving the requisite federal agency approvals. *See* Mem. in Support of Mot. to Stay ("Pls.' Mem.") 1, ECF No. 26-1. But Federal Defendants and Revolution Wind contend that plaintiffs' fear is a misapprehension that could have been cleared up through consultation. Revolution Wind Opp'n 2; Fed. Defs.' Opp'n 14. Another potential area for clarification would have been whether plaintiffs were correct about the government's alleged "admission that it does not have a valid biological opinion," Pls.' Mem. 8, since the government argues in its opposition that the existing Biological Opinion remains valid and in effect, Fed. Defs.' Opp'n 21. Even if consultation would not have succeeded in changing plaintiffs' decision to file their motion to stay, it may well have reduced or narrowed the issues the Court would need to consider in deciding this motion.

The Court will therefore deny plaintiffs' nonconforming motion to stay.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that plaintiffs' Motion for Stay of Final Agency Action is **DENIED**; and it is further **ORDERED** that Climate Action Rhode Island's motion to file a brief as amicus curiae is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Date: 4-30-24

Royce C. Lamberth
United States District Judge