UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**GREEN OCEANS**, *et al.*,

    *Plaintiffs,*

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR**, *et al.*,

    *Defendants,*
and

**REVOLUTION WIND, LLC**,

    *Defendant-Intervenor.*

Case No. 1:24-cv-00141-RCL

## MEMORANDUM OPINION

    Plaintiffs have mounted a second effort to secure an administrative stay of federal agency approvals for, and enjoin continuing construction of, the Revolution Wind Farm and Revolution Wind Export Cable Project, which is being developed by defendant-intervenor Revolution Wind, LLC. The Court denied their previous motion for failure to meet and confer with opposing counsel as required by Local Civil Rule 7(m). This time, plaintiffs run aground on standing doctrine. Plaintiffs filed their Motion for a Stay or Preliminary Injunction with two attached declarations. When Revolution Wind and the Federal Defendants challenged plaintiffs' standing, plaintiffs—hoping to shore up their deficient motion—sought the Court's permission to file a reply and seven additional declarations. But plaintiffs have failed to show good cause to grant them a second opportunity to show standing.

    The Court will therefore **DENY** plaintiffs' Motion for Leave to File a Reply and Supplemental Declarations. Considering the arguments and affidavits of plaintiffs' Motion for a

1

Stay or Preliminary Injunction, the Court concludes that plaintiffs did not show injury-in-fact for either of their claims and therefore have failed to establish a sufficient likelihood of standing. Plaintiffs' Motion for a Stay or Preliminary Injunction is thus **DENIED**.[1]  As the Court will not reach the merits of the dispute, Climate Action Rhode Island's Motion for Leave to File an Amicus Curiae Brief in Opposition to Plaintiffs' Motion is **DENIED AS MOOT**.

## I.   BACKGROUND

The Revolution Project is a wind energy project located off the coast of Rhode Island.  The Bureau of Ocean Energy Management and other federal agencies approved the Project on August 21, 2023.  Am. Compl. ¶ 64, ECF No. 33.  This approval rested on a Biological Opinion from the National Marine Fisheries Service (NMFS), which determined that the project would not jeopardize any species protected by the Endangered Species Act (ESA).  *Id.* ¶ 62.  On September 15, 2023, NMFS issued its final Incidental Take Regulations, which authorized the take of numerous species, including North Atlantic Right Whales.  *Id.* ¶ 234.  Plaintiffs commenced this action in January 2024, challenging federal approvals relating to the Revolution Project.[2]  Plaintiffs allege violations of the Administrative Procedure Act, the Outer Continental Shelf Lands Act, the National Environmental Policy Act, the ESA, the Marine Mammal Protection Act, the Migratory Bird Treaty Act, the Clean Water Act (CWA), the Coastal Zone Management Act, and the National Historic Preservation Act.  *See id.* ¶¶ 65–311.

---

[1] Plaintiffs requested a hearing on their Motion for a Stay or Preliminary Injunction.  But for the reasons stated in this Memorandum Opinion, and because plaintiffs themselves substantially delayed resolution of this matter,  the Court finds that the facts of this case do not make expedition essential, LCvR 65.1(d), and that the parties' written filings suffice for resolving this motion.  The Court therefore denies plaintiffs' request for a hearing.  *See* LCvR 7(f) ("A party may . . . request an oral hearing, but its allowance shall be within the discretion of the Court.").

[2] Plaintiffs also challenged federal approvals concerning another offshore wind project, the South Fork Wind Farm and South Fork Export Cable Project.  But the Court has severed all proceedings relating to the South Fork Project. ECF No. 25.  In the same Order, the Court granted Revolution Wind's motion to intervene.

In April, plaintiffs asked the Court to stay the effective dates of federal approvals and authorizations and to enjoin Revolution Wind from further construction.  1st Stay Mot., ECF No. 26.  In opposing this motion, Revolution Wind dedicated nearly seven pages to arguing that plaintiffs had failed to demonstrate Article III standing.  *See* Revolution Wind's Opp'n to 1st Stay Mot. 14–21, ECF No. 29.  The Court denied plaintiffs' motion because plaintiffs violated the meet and confer obligation of Local Civil Rule 7(m).  *Green Oceans v. United States Dep't of the Interior*, No. 1:24-cv-00141 (RCL), 2024 WL 1885543 (D.D.C. Apr. 30, 2024).

On May 14, plaintiffs once again asked the Court to stay the effective dates of (1) the approvals and authorizations in the Record of Decision for the Project and (2) the Incidental Take Regulation approved by the NMFS.  Prelim. Inj. Mot. 1, ECF No. 35.  Plaintiffs also moved for the Court to enjoin Revolution Wind from construction work purportedly authorized by those agency actions.  *Id.* at 2.  In support, plaintiffs advance two claims.  First, they argue that the U.S. Army Corps of Engineers violated the CWA by issuing construction and operation permits without considering impacts on the Cox Ledge aquatic area or analyzing alternatives.  *See* Mem. in Support of Prelim. Inj. Mot. (Prelim. Inj. Mem.) 14–18, ECF No. 35-1; *see also* Am. Compl. ¶¶ 253–281.  Second, they contend that the government violated the ESA by not adequately assessing the Project's effect on the endangered North Atlantic Right Whale.  *See* Prelim. Inj. Mem. 19–31; *see also* Am. Compl. ¶¶ 195–226.  Alongside their motion, plaintiffs included two affidavits, one from Lisa Linowes, co-founder of associational plaintiff Save Right Whales Coalition, and one from individual plaintiff Dr. Elizabeth Quattrocki Knight, who is also president of associational plaintiff Green Oceans.  *See* 1st Linowes Dec., Ex. 2 to Prelim. Inj. Mot., ECF No. 35-3; 1st Knight Dec., Ex. 3 to Prelim. Inj. Mot., ECF No. 35-4.

Federal Defendants and Revolution Wind both oppose this motion. Fed. Defs.' Opp'n to Prelim. Inj. Mot. (Fed. Defs.' Opp'n), ECF No. 38; Revolution Wind's Opp'n to Prelim. Inj. Mot. (Revolution Wind's Opp'n), ECF No. 37. Of note, both challenge plaintiffs' Article III standing. *See* Fed. Defs. Opp'n 35–37; Revolution Wind Opp'n 16–23. Having received the oppositions, the Court was prepared to rule promptly. However, plaintiffs moved for an extension of time to submit a motion for leave to file a reply and supplemental declarations. ECF No. 40. The Court granted the extension, "understanding, of course, this may delay the Court's decision on the pending motion for preliminary relief." ECF No. 41. Plaintiffs then filed their motion. Pls.' Mot. for Leave to File Reply and Suppl. Decs. (Pls.' Mot. for Leave to File), ECF No. 43. They attached seven declarations, included revised versions of the Knight and Linowes Declarations. Revolution Wind and Federal Defendants both opposed this motion. *See* Revolution Wind's Opp'n to Mot. for Leave to File, ECF No. 47; Fed. Defs.' Opp'n to Mot. for Leave to File, ECF No. 48.

In the meantime, Climate Action Rhode Island moved for leave to file an amicus curiae brief opposing plaintiffs' motion for relief by supplying a different perspective on the public interest implicated in the dispute. *See* Amicus Mot., ECF No. 42.

## II. LEGAL STANDARDS

If the litigant lacks standing, the court has no subject-matter jurisdiction, and therefore lacks constitutional authority to decide the case. *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1156–57 (D.C. Cir. 2005). The plaintiff bears the burden of establishing standing by demonstrating "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, No. 23-235, slip op. at 7–8 (U.S. June 13, 2024). The D.C. Circuit has explained that "[i]n the context of a preliminary injunction motion," the plaintiff must "'show a "substantial likelihood" of standing.'" *Elec. Priv.*

*Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912–13 (D.C. Cir. 2015)).[3] Under this "heightened standard," "the plaintiff cannot 'rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts' that, if 'taken to be true,' demonstrate a substantial likelihood of standing." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Injury-in-fact is part of the "irreducible constitutional minimum of standing," *Defs. of Wildlife*, 504 U.S. at 560, including in the case of a procedural injury. If a procedural requirement was "'designed to protect some threatened concrete interest' of the plaintiff," then "a plaintiff may have standing to challenge the failure of an agency to abide by a procedural requirement." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc) (quoting *Defs. of Wildlife*, 504 U.S. at 573 n.8)). In such a situation, "the courts relax—while not wholly eliminating—the issues of imminence and redressability, but not the issues of injury in fact or causation." *Ctr. for L. & Educ.*, 396 F.3d at 1157. Accordingly, "[t]he mere violation of a procedural requirement . . . does not permit any and all persons to sue to enforce the requirement." *Fla. Audubon Soc.*, 94 F.3d at 664; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."). Rather, the plaintiff must show that "the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff" and that "it is substantially probable that the procedural

---

[3] The same standard applies to a motion to stay agency action under 5 U.S.C. § 705. Such a motion is evaluated according to the same four-part test used to evaluate a request for a preliminary injunction, which includes likelihood of success on the merits. *See, e.g.*, *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012) (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C.Cir.1985) and *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). And demonstrating likelihood of success on the merits requires establishing a likelihood of standing. *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015).

breach will cause the essential injury to the plaintiff's own interest." *Fla. Audubon Soc.*, 94 F.3d at 664–65.

If not readily apparent, standing must be shown in a party's opening brief, unless the omission is excused by good cause. The D.C. Circuit has repeatedly underscored that "a petitioner may not wait to attempt to meet its burden of demonstrating standing until after the respondent contests the issue." *Ohio v. Env' Prot. Agency*, 98 F.4th 288, 300 (D.C. Cir. 2024). That is because "the ordinary rules of forfeiture apply to standing," including "the basic precept that arguments generally are forfeited if raised for the first time in reply." *Twin Rivers Paper Co. LLC v. Sec. & Exch. Comm'n*, 934 F.3d 607, 615 (D.C. Cir. 2019) (internal quotation and citation omitted). This approach is consistent with the spirit and letter of the Local Rules. *See* LCvR 65.1(c) (providing that "[a]n application for a preliminary injunction . . . . shall be supported by all affidavits on which the plaintiff intends to rely" and [s]upplemental affidavits . . . may be filed only with permission of the Court"); *see also* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion."). So, "absent 'good cause shown,' a petitioner whose standing is not readily apparent must show that it has standing in 'its opening brief.'" *Ohio*, 98 F.4th at 300 (quoting *Sierra Club v. E.P.A.*, 292 F.3d 895, 900–01 (D.C. Cir. 2002)).

The D.C. Circuit has "found such good cause in two circumstances: where 'the parties reasonably, but mistakenly, believed that the initial filings before the court had sufficiently demonstrated standing,' . . . . and where the parties 'reasonably assumed that [their] standing was self-evident' from the administrative record." *Twin Rivers Paper Co.*, 934 F.3d at 614 (first quoting *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 599 (D.C. Cir. 2015) and then quoting *Am. Library Ass'n v. F.C.C.*, 401 F.3d 489, 494 (D.C. Cir. 2005)). Court have declined to consider tardy affidavits when "[p]laintiffs have identified nothing that would excuse their failure to submit

6

the affidavits and raise their standing arguments with their initial motion, and it would be unfair for the court to address these late additions when Defendants have had no opportunity to respond." *Nguyen v. U.S. Dep't of Homeland Sec.*, 460 F. Supp. 3d 27, 34 (D.D.C. 2020).

### III.     DISCUSSION

Plaintiffs seek to establish standing through supplemental affidavits raising new theories of standing. But the Court finds there is no good cause to permit plaintiffs to establish standing through these tardy efforts. Excluding from consideration these additional declarations, the Court holds that plaintiffs have failed to make the necessary showing of standing.[4]

**A. The Court Will Not Consider Plaintiffs' Belated Supplemental Declarations**

Before the Court can decide whether plaintiffs have established a substantial likelihood of standing, it must determine the universe of information to be considered. Plaintiffs, apparently nervous about whether their initial affidavits suffice, seek a further opportunity to establish their standing by filing seven additional declarations. *See* Mot. for Leave to File. But they have not attempted to explain why their request to file supplemental declarations is supported by good cause. As plaintiffs are attempting to raise new theories at this late hour, the Court will not grant them a second opportunity to demonstrate standing. The Court will therefore decline to consider plaintiffs' supplemental declarations.[5]

Plaintiffs should have explained the basis for their standing in their motion because they had "good reason to know that their standing is not self-evident." *Am. Libr. Ass'n.*, 401 F.3d at

---

[4] To be clear, the Court's holding is that at this stage in the litigation, plaintiffs have failed to establish the substantial likelihood of standing required for a stay or preliminary injunction. This determination should not be taken to necessarily foreshadow how the Court may rule on standing at a later stage and in light of additional information.

[5] In addition to denying leave to file the supplemental declarations, the Court also denies leave to file the reply. Local Civil Rule 65.1(c) provides for oppositions to applications for preliminary injunctions, but says nothing about replies. LCvR 65.1(c). Plaintiffs' proffered reply would not help resolve the pending motion because the motion fails on the basis of standing and because the reply seeks to raise several non-standing arguments for the first time.

493 (emphasis omitted).  "[S]tanding is usually self-evident when the plaintiff is a regulated party or an organization representing regulated parties." *Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165, 176 (D.D.C. 2008) (citing *S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 895–96 (D.C. Cir. 2006)).  But it is black letter law that "when (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of *someone else*,' 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *All. for Hippocratic Med.*, slip op. at 10 (quoting *Defs. of Wildlife*, 504 U.S. at 562).  Here, plaintiffs are not regulated parties; they are individuals challenging the alleged under-regulation of Revolution Wind.  Furthermore, since Revolution Wind raised similar objections to plaintiffs' standing in response to their previous motion, plaintiffs were on notice standing would likely be challenged again.  *Cf. Am. Libr. Ass'n.*, 401 F.3d at 492 (concluding that petitioners reasonably believed their standing was self-evident in part because "nothing in the record alerted petitioners to the possibility that their standing would be challenged in this court").  Under these circumstances, the Court will grant leave to file a reply and supplemental declarations only if this request is supported by good cause.

Good cause is lacking here.  Plaintiffs have oddly made no effort to explain the presence of good cause.  In any event, since plaintiffs are not regulated parties, and were on notice that their standing would be challenged, they could not have reasonably assumed their standing was self-evident.  *See Twin Rivers Paper Co.*, 934 F.3d at 614.  Yet in their motion for relief, they made little effort to show standing or anticipate obvious arguments against their standing.  Plaintiffs therefore could not have reasonably believed their initial filings adequately demonstrated standing.  *See id.*

Moreover, there is no good cause because plaintiffs now seek to raise entirely new injuries for their CWA claim concerning Cox Ledge and their ESA claim involving the North Atlantic

8

Right Whale.  Supplemental declarations may be appropriate when "plaintiffs submitted the supplemental declarations in reply to definitively lock in standing, which they had nearly established already."  *Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 111 (D.C. Cir. 2021).  But for both plaintiffs' claims here, "there was 'a far less substantial showing of standing in' the initial affidavits filed with the opening brief" and each of "the reply affidavits 'raise[d] an entirely new theory of standing.'"  *Id.* (quoting *Twin Rivers Paper Co.*, 934 F.3d at 615–16).

Plaintiffs attempt to start from scratch on their CWA claim.  As discussed below, their initial affidavits do not allege any connection to Cox Ledge in particular.  The supplemental affidavits mark the first time plaintiffs attempt to show that the Project would affect plaintiff and plaintiff organizations' members' ability to continue fishing in or near the Cox Ledge area.  *See* Brown Dec., Ex. 2 to Mot. for Leave to File, ECF No. 43-3; Hittinger Dec., Ex. 3 to Mot. for Leave to File, ECF No. 43-4.

Likewise, plaintiffs wish to begin anew on their ESA claim.  As the Court addresses below, the two initial declarations do not assert that any plaintiff has observed the North Atlantic Right Whale or has future concrete plans to do so.  Instead, the original Linowes and Knight declarations merely state that Save Right Whales Coalition and Green Oceans advocate for the protection of this species.  Now, plaintiffs have rewritten the Linowes and Knight declarations to say that the Project will impair observations of these creatures by Save Rights Whales Coalition members and Dr. Knight.  *See* 2d Linowes Dec. ¶ 4, Ex. 4 to Pls.' Mot. for Leave to File, ECF No. 43-5; 2d Knight Dec. ¶¶ 4–5, Ex. 1 to Pls.' Mot. for Leave to File, ECF No. 43-2.

So, for both the CWA and the ESA claims, the supplemental affidavits raise entirely new theories of standing far more substantial than any suggested in the initial affidavits.  But this circuit's case law does not "permit reply affidavits that propose a new theory of injury—whether

obvious or not." *Twin Rivers Paper Co.*, 934 F.3d at 615.  And if the Court were to permit plaintiffs to raise new theories of standing through a reply, fairness would require allowing Revolution Wind and the Federal Defendants an opportunity to respond through sur-replies.  But the Court does not intend to sit at the center of an endless merry-go-round of motion papers that spins even as construction on the Project—which plaintiffs allege is causing them irreparable injury—proceeds apace.  Good cause does not require review of plaintiffs' second round of declarations and so the Court will limit its consideration of standing to plaintiffs' initial arguments and affidavits.

### B. Plaintiffs Have Failed to Show a Substantial Likelihood of Standing for Either Claim

Since plaintiffs have failed to establish a concrete and particularized injury-in-fact for either their CWA or ESA claims, the Court finds they have not established a substantial likelihood of standing.  Plaintiffs' motion for preliminary relief fails to clear this jurisdictional prerequisite.

#### 1. Plaintiffs Lack Standing to Assert Their CWA Claim

Plaintiffs have failed to demonstrate that the Corps' alleged violation would cause any plaintiff concrete injury.  They have therefore not shown a substantial likelihood of standing for their CWA claim.

Plaintiffs have not established injury-in-fact because they have not shown any connection to the specific area of Cox Ledge.  The crux of plaintiffs' CWA claim is that the Corps issued permits for the Revolution Wind Project without considering practicable alternatives as required, risking damage to the Cox Ledge habitat. Prelim. Inj. Mem. 17–18.  But the alleged harm to Cox Ledge and its wildlife does not automatically translate to concrete injury to plaintiffs.

And the affidavits attached to plaintiffs' motion fail to show any such injury to an individual plaintiff or a member of a plaintiff organization.  Although an organization may assert associational standing on behalf of its members, it "must show that at least one specifically-

identified member has suffered an injury-in-fact." *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006). Plaintiffs' initial affidavits were from Dr. Elizabeth Knight, a psychiatrist who is an individually named plaintiff and president of plaintiff organization Green Oceans, and Lisa Linowes, co-founder of Save Right Whales Coalition. *See* 1st Knight Dec.; 1st Linowes Dec. But these declarations offer no reason to think the alleged environmental effect on Cox Ledge would specifically harm Dr. Knight, Ms. Linowes, or any member of their organizations. Indeed, plaintiffs have not alleged any connection to Cox Ledge in particular. Ms. Linowes's declaration does not mention Cox Ledge. Dr. Knight's declaration at least references Cox Ledge. *See* 1st Knight Dec. ¶¶ 5–7. But although her declaration states that Green Oceans's members "will have issues fishing, boating, and enjoying the unindustrialized ocean" in general, it does not say that any members have ever or will ever go to Cox Ledge or will even suffer from the ripple effects of what occurs there. *See* 1st Knight Dec. ¶ 10.

Dr. Knight maintains that she and Green Oceans are deeply "deeply troubled by the impact offshore wind . . . will have on marine mammals, the marine environment, the ecologically vital Coxes [sic] Ledge area, and fishermen who fish in the Revolution Wind area." 1st Knight Dec. ¶ 5. But "[a] plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it." *Defs. of Wildlife*, 504 U.S. at 565–66 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 887–89 (1990)). And "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Defs. of Wildlife*, 504 U.S. at 573–74.

Since plaintiffs have not shown any connection to Cox Ledge or effect on them from the Project's alleged impact on Cox Ledge, they have failed to establish standing.

### 2. Plaintiffs Lack Standing to Assert Their ESA Claim

Plaintiffs have also failed to demonstrate injury-in-fact, and therefore standing, for their ESA claim.

When plaintiffs sue based on harm to wildlife, they must still show injury-in-fact to themselves. Of course, "[t]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Defs. of Wildlife*, 504 U.S. at 562–63. Yet "the key requirement . . . is that the plaintiff have suffered his injury in a personal and individual way—for instance, by seeing with his own eyes the particular animals whose condition caused him aesthetic injury." *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 433 (D.C. Cir. 1998); *see also Defs. of Wildlife*, 504 U.S. at 566 (stating that "[i]t is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm"). Plaintiffs must therefore show not only that the challenged agency approvals for the Project would threaten the survival of the North Atlantic Right Whales but also that at least one plaintiff or member of a plaintiff organization would "suffer a concrete and particularized— that is, individualized—harm if the future of the species was even more threatened than it already is." *Conservation L. Found. v. Ross*, 422 F. Supp. 3d 12, 20 (D.D.C. 2019).

Plaintiffs' declarations do not demonstrate that any effect the Project may have on North Atlantic Right Whales would cause individualized harm to any plaintiff or member of a plaintiff organization.

First, the Linowes Declaration does not show injury-in-fact. It describes Save Right Whales Coalition as a coalition that advocates against offshore wind development and works to

12

protect the North Atlantic Right Whale. 1st Linowes Dec. ¶ 1. Yet in contrast to another plaintiff recently found to have standing in a similar case, Ms. Linowes does not state that she—or any member of Save Right Whales Coalition—has taken trips to observe the North Atlantic Right Whales or has concrete plans to do so in the future. *See Comm. for a Constructive Tomorrow v. United States Dep't of the Interior*, No. 24-cv-774 (LLA), 2024 WL 2699895, at *3 (D.D.C. May 24, 2024) (concluding that at least one plaintiff had sufficiently alleged an injury-in-fact because he "has an abiding interest in the Right Whale, he has concrete plans to observe the Right Whale in the near future, and he believes that the Project will interfere with these plans"). And the Supreme Court has expressly rejected theories of standing for "anyone who has an interest in studying or seeing the endangered animals anywhere on the globe" or "with a professional interest in such animals." *Defs. of Wildlife*, 504 U.S. at 566. The Linowes Declaration therefore fails to establish individualized injury-in-fact to any plaintiff.

The Knight Declaration is similarly unsuccessful in showing injury-in-fact. Dr. Knight explains that Green Oceans advocates for combating climate change without harming the oceans. 1st Knight Dec. ¶ 3. She asserts that because Revolution Wind will threaten the future of the North Atlantic Right Whale, it "will injure Green Oceans [sic.] interests in protecting the marine environment and the endangered species within it for future generations." *Id.* ¶ 11. But again, Dr. Knight does not say that she or any Green Oceans member has or will observe the North Atlantic Right Whale.

Plaintiffs have therefore failed to show that any plaintiff or member of plaintiff organization has an individualized interest in the protection of the North Atlantic Right Whale. Plaintiffs themselves tacitly acknowledge that the Linowes and Knight Declarations are inadequate to demonstrate standing. In their reply, their argument for injury-in-fact relies *exclusively* on

information from the supplemental declarations—including the revised Linowes and Knight Declarations—with no mention of the initial affidavits. *See* Pls.' Reply 4–10, Ex. 1 to Mot. for Leave to File, ECF No. 43-1.

* * *

Although the Court does not doubt the sincerity of plaintiffs' ardor for Cox Ledge or the North Atlantic Right Whale, the Supreme Court "has long made clear that distress at or disagreement with the activities of others is not a basis under Article III for a plaintiff to bring a federal lawsuit challenging the legality of a government regulation allowing those activities." *All. for Hippocratic Med.*, slip op. at 17 n.3. Plaintiffs "do not have standing to sue simply because *others* are allowed to engage in certain activities—at least without the plaintiffs demonstrating how they would be injured by the government's alleged under-regulation of others." *Id.* at 20. Plaintiffs have therefore failed to show a substantial likelihood of standing for their claims.

## IV.   CONCLUSION

As plaintiffs have not shown good cause for why the Court should permit them to supplement their evidence of standing with belated declarations, the Court will **DENY** plaintiffs' Motion for Leave to File a Reply and Supplemental Declarations. And since plaintiffs have not shown injury-in-fact for either of their claims, the Court concludes that they have not established a substantial likelihood of standing and will **DENY** their Motion for a Stay or Preliminary Injunction. As the Court will not reach the question of whether to grant a stay or preliminary injunction, the Court will **DENY AS MOOT** Climate Action Rhode Island's Motion for Leave to File an Amicus Curiae Brief in Opposition to Plaintiffs' Motion.

A separate Order consistent with this Opinion shall issue.

Date: 6/24/24

Royce C. Lamberth
United States District Judge