**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GREEN OCEANS, *et al.*, | |
| *Plaintiffs,* | |
| v. | Case No.: 1:24-cv-00141-RCL |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | |
| *Defendants,* | |
| and | |
| REVOLUTION WIND, LLC, | |
| *Defendant-Intervenor* | |

<u>**DEFENDANT-INTERVENOR REVOLUTION WIND, LLC'S MOTION TO DISMISS**</u>
<u>**PLAINTIFFS' AMENDED COMPLAINT**</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Civil Rule 7, Defendant-Intervenor Revolution Wind, LLC ("Revolution Wind") hereby moves this Court for an order dismissing all claims asserted by Plaintiffs in the First Amended Complaint to Reverse and Set Aside Final Agency Action, Dkt. 33 ("First Amended Complaint"), with prejudice, and granting such other and further relief as the Court deems just and proper.

Revolution Wind respectfully requests that the Court grant Revolution Wind's motion to dismiss the First Amended Complaint, Dkt. 33, with prejudice, because: (1) Plaintiffs lack standing for any of their claims; (2) Plaintiffs fail to plead the requisite participation in the administrative process for certain claims; (3) Plaintiffs failed to provide an adequate, statutorily required 60-day notice of intent to sue for their claims under the Outer Continental Shelf Lands Act ("OCSLA"); (4) Plaintiffs do not properly allege any violation of the Migratory Bird Treaty Act ("MBTA") by

Federal Defendants; and (5) the Coastal Zone Management Act ("CZMA") does not provide a private right of action, and Plaintiffs fail to identify any federal agency action that allegedly violated the CZMA.

In support of this motion, Revolution Wind relies on the accompanying statement of points and authorities and all pleadings and proceedings had therein.

Dated:  July 19, 2024                        Respectfully submitted,


By */s/ Janice M. Schneider*

Janice M. Schneider (D.C. Bar No. 472037)
Stacey L. VanBelleghem (D.C. Bar No. 988144)
Devin M. O'Connor (D.C. Bar No. 1015632)
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, D.C. 20004
Tel:  (202) 637-2200
Fax:  (202) 637-2201
Email: janice.schneider@lw.com
       stacey.vanbelleghem@lw.com
       devin.o'connor@lw.com

*Counsel for Defendant-Intervenor*
*Revolution Wind, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREEN OCEANS, *et al.*,

       *Plaintiffs,*

  v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al.*,

       *Defendants,*

  and

REVOLUTION WIND, LLC,

       *Defendant-Intervenor*

Case No.: 1:24-cv-00141-RCL

## DEFENDANT-INTERVENOR REVOLUTION WIND, LLC'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND AND STATEMENT OF FACTS ..............................................2

      A.     Revolution Wind Project Background ........................................................2
      B.     Multi-Year Federal Review and Approval Processes .................................3
      C.     Procedural History .....................................................................................9

III.    LEGAL STANDARD ..........................................................................................10

IV.     ARGUMENT ........................................................................................................12

      A.     Plaintiffs Have Failed to Adequately Plead Standing...............................12

            1.     Plaintiffs Have Not Adequately Alleged An Injury-In-Fact.........14

                  a.     Wildlife Plaintiffs................................................................15
                  b.     Recreation Plaintiffs............................................................17
                  c.     Property Plaintiffs ................................................................17

            2.     Plaintiffs Have Not Established Causation or Redressability...................19

                  a.     Wildlife Plaintiffs................................................................19
                  b.     Recreation Plaintiffs............................................................20
                  c.     Property Plaintiffs ................................................................20

            3.     Plaintiffs Fail to Allege at Least One Plaintiff Has Standing to Bring Each of Their Nine Claims ...............................................21

      B.     Plaintiffs Fail to Plead the Requisite Participation in the Administrative Processes for Certain Claims ....................................................................23

            1.     Plaintiffs Do Not Allege Their CWA Arguments Were Raised During USACE's Administrative Process and Therefore Waived Their CWA Claims ....................................................................23
            2.     Plaintiffs Do Not Allege Facts Sufficient to Satisfy FAST-41 Administrative Process Participation Requirements...................24

      C.     Plaintiffs Did Not Provide 60-Day Notice under OCSLA Before Bringing their Lawsuit ..............................................................................................25
      D.     Plaintiffs Fail to Plead a Claim For Relief Under the MBTA ..................26
      E.     Plaintiffs Fail to Plead a Claim For Relief Under the CZMA ..................27

V.      CONCLUSION.....................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Farm Bureau v. U.S. E.P.A.*,
121 F. Supp. 2d 84 (D.D.C. 2000) ........................................................................16

*Appalachian Voices v. FERC*,
No. 17-1271, 2019 WL 847199 (D.C. Cir. Feb. 19, 2019) ....................................18

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ................................................................................10

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989) .........................................................................................16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................11

*Booth v. Bowser*,
597 F. Supp. 3d 1 (D.D.C. 2022) ..........................................................................12

*Chamber of Com. of U.S. v. E.P.A.*,
642 F.3d 192 (D.C. Cir. 2011) ..............................................................................18

*Ctr. for Biological Diversity v. Haaland*,
No. 22-CV-3588 (DLF), 2023 WL 5161741 (D.D.C. Aug. 11, 2023) ...............3, 11

*Delaware Dep't of Nat. Res. & Env't Control v. FERC*,
558 F.3d 575 (D.C. Cir. 2009) ..............................................................................15

*\*Dep't of Transp. v. Pub. Citizen*,
541 U.S. 752 (2004) ..............................................................................................23

*\*Duke Energy Field Servs. Assets, LLC v. Fed. Energy Regul. Comm'n*,
150 F. Supp. 2d 150 (D.D.C. 2001) ................................................................25, 26

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
878 F.3d 371 (D.C. Cir. 2017) .........................................................................12, 21

*Flast v. Cohen*,
392 U.S. 83 (1968) ................................................................................................14

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ........................................................................16

*Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*,
    255 F. Supp. 3d 60 (D.D.C. 2017) ..................................................................27

*George v. Evans*,
    311 F. App'x 426 (2d Cir. 2009) ....................................................................28

*George v. NYC Dep't of City Planning*,
    436 F.3d 102 (2d Cir. 2006)............................................................................28

*Green Oceans v. U.S. Dep't of the Interior*,
    No. 1:24-CV-00141-RCL, 2024 WL 3104945 (D.D.C. June 24, 2024)................................15

*Green Oceans v. U.S. Dep't of the Interior*,
    No. 1:24-cv-00141-RCL, Dkt. 1 (D.D.C. Jan. 16, 2024)......................................................9

*Gunpowder Riverkeeper v. FERC*,
    807 F.3d 267 (D.C. Cir. 2015) ........................................................................15

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*,
    484 U.S. 49 (1987)...........................................................................................25

*Haase v. Sessions*,
    835 F. 2d 902 (D.C. Cir. 1987) ...............................................................11, 13

*Hallstrom v. Tillamook Cnty.*,
    493 U.S. 20 (1989)...........................................................................................25

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982).........................................................................................13

*Healthy Gulf v. U.S. Army Corps of Eng'rs*,
    81 F.4th 510 (5th Cir. 2023) ...........................................................................24

*Hill v. Bd. of Tr. of the Univ. of D.C.*,
    146 F. Supp. 3d 178 (D.D.C. 2015) .............................................................3, 11

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973).........................................................................................19

*\*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................11, 12, 13, 14, 15, 16, 19

*Marino v. Nat'l Oceanic & Atmospheric Admin.*,
    33 F.4th 593 (D.C. Cir. 2022) ...................................................................12, 19

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) ..................................................................................................14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ..................................................................................................21

*Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) ................................................................................18

*NO Gas Pipeline v. FERC*,
   756 F.3d 764 (D.C. Cir. 2014) ..................................................................................19

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
   797 F.3d 1087 (D.C. Cir. 2015) ................................................................................16

*Protect Our Cmtys. Found. v. Jewell*,
   825 F.3d 571 (9th Cir. 2016) ....................................................................................27

*Pub. Citizen v. Foreman*,
   471 F. Supp. 586 (D.D.C. 1979) ...............................................................................19

*Pub. Emps. for Env't Resp. v. Beaudreau*,
   25 F. Supp. 3d 67 (D.D.C. 2014), *appeal dismissed sub nom. Pub. Emps. for
   Env't Resp. v. Cruickshank*, No. 14-5117, 2014 WL 3014869 (D.C. Cir. June
   11, 2014) ...................................................................................................................26

*Safari Club Int'l v. Jewell*,
   960 F. Supp. 2d 17 (D.D.C. 2013) ............................................................................25

*Saline Parents v. Garland*,
   88 F.4th 298 (D.C. Cir. 2023) ..................................................................................11

*Save Long Beach Island v. U.S. Dep't of Com.*,
   No. 3:23-cv-01886-RK-JBD, 2024 WL 863428 (D.N.J. Feb. 29, 2024) ...........15, 17

*Seafreeze Shoreside Inc. v. U.S. Dep't of Interior*,
   No. 1:22-cv-11091-IT, 2023 WL 6691015 (D. Mass. Oct. 12, 2023) ......................16

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) ..................................................................................................13

*Simon v. E. Kentucky Welfare Rts. Org.*,
   426 U.S. 26 (1976) ....................................................................................................20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................11, 14

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)................................................................11

*\*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..............................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................2, 11

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978)..............................................................23

*Waterkeeper Alliance, Inc. v. Regan*,
    41 F.4th 654 (D.C. Cir. 2022)...............................................19

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)..............................................................18

## STATUTES

16 U.S.C.
    § 1456(c)(3)(A).....................................................................28
    § 1536(a)(2)...........................................................................6

33 U.S.C.
    § 1362(7)................................................................................8
    § 1362(8)................................................................................8

42 U.S.C.
    § 4370m-6(a)(1)(B)................................................................24
    § 4370m-6(a)(1)(B)(i)............................................................25
    § 4370m-6(a)(1)(B)(ii)...........................................................25

43 U.S.C. § 1349(a)(2)..........................................................25, 26

54 U.S.C. § 306108..................................................................5

## RULES

Fed. R. Civ. P. 12(b)(1)....................................................1, 10, 11, 12

Fed. R. Civ. P. 12(b)(6)....................................................1, 11, 26, 27

# REGULATIONS

15 C.F.R.
pt. 930, subpt. D ...................................................................................................8, 28
§ 930.57 ...............................................................................................................8, 27
§ 930.62 ...............................................................................................................8, 28
§ 930.63 ...................................................................................................................28
§ 930.64 ...................................................................................................................28

33 C.F.R.
§ 328.4(a) ...............................................................................................................8, 9
§ 329.12(a) ...................................................................................................................9

36 C.F.R.
§ 800.1 .........................................................................................................................5
§ 800.2(c)(5) .............................................................................................................19
§ 800.10 .......................................................................................................................5

# OTHER AUTHORITIES

86 Fed. Reg. 22,972 (Apr. 30, 2021) ...........................................................................4

87 Fed. Reg. 54,248 (Sept. 2, 2022) .............................................................................4

88 Fed. Reg.
47,171 (Jul. 21, 2023) ...................................................................................................4
72,562 (Oct. 20, 2023) ..................................................................................................7
82,834 (Nov. 27, 2023) .................................................................................................7

89 Fed. Reg.
15,982 (Mar. 3, 2024) ...................................................................................................8
41,391 (May 13, 2024) ..................................................................................................7

## I.     INTRODUCTION

This case challenges the Revolution Wind Farm and Export Cable (together, the "Project"), an offshore wind energy project that is currently under construction, and that will provide enough clean, affordable renewable energy to power over 350,000 homes in Rhode Island and Connecticut pursuant to its competitively-awarded power purchase agreements with several utilities.   The Project is supporting hundreds of new jobs and, once constructed, will also contribute to the federal government's, Rhode Island's and Connecticut's substantial greenhouse gas and carbon reduction goals.

This Court twice rejected the Plaintiffs' motion to stay construction of the Project—most recently finding that Plaintiffs did not adequately show standing required for a stay or preliminary injunction.  Plaintiffs' First Amended Complaint, Dkt. 33 ("FAC"), similarly fails to demonstrate standing and suffers from numerous other legal and procedural flaws that require the entire FAC to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

In the FAC, Plaintiffs seek an order reversing and setting aside the approvals issued by Federal Defendants[1] for the Project, alleging violations of the Administrative Procedure Act ("APA"), Outer Continental Shelf Lands Act ("OCSLA"), National Environmental Policy Act ("NEPA"), Endangered Species Act ("ESA"), Marine Mammal Protection Act ("MMPA"), Migratory Bird Treaty Act ("MBTA"), Clean Water Act ("CWA"), Coastal Zone Management Act ("CZMA"), and National Historic Preservation Act ("NHPA").  None of these claims can survive a motion to dismiss.

---

[1] "Federal Defendants" are the U.S. Department of the Interior, Secretary of the Interior, Bureau of Ocean Energy Management ("BOEM"), Director of BOEM, National Marine Fisheries Service ("NMFS"), Administrator of NMFS, U.S. Army Corps of Engineers ("USACE"), and Commanding General of USACE.

*First*, Plaintiffs lack standing for any of their claims because they fail to establish any of the prongs of standing: injury-in-fact, causation, or redressability.

*Second*, Plaintiffs fail to plead the requisite participation in the administrative processes for certain of their claims.  Plaintiffs do not allege facts sufficient to show their CWA arguments have not been waived because Plaintiffs failed to participate and raise these claims in USACE's CWA Section 404 public comment process.  And Plaintiffs do not plead facts to satisfy the administrative participation requirements in Title 41 of the Fixing America's Surface Transportation Act  ("FAST-41") limitations on claims provision.

*Third*, Plaintiffs failed to provide an adequate, statutorily required 60-day notice of intent to sue for their claims under OCSLA.

*Fourth*, Plaintiffs do not properly allege any violation of the MBTA by Federal Defendants.

*Fifth*, the CZMA does not provide a private right of action, and Plaintiffs fail to identify any federal agency action that allegedly violated the CZMA.

Accordingly, Plaintiffs' entire FAC should be dismissed with prejudice.

## II.    BACKGROUND AND STATEMENT OF FACTS

### A.    <u>Revolution Wind Project Background</u>

The effort to develop the Project began over a decade ago.  BOEM initiated the leasing process for parcels offshore Rhode Island and Massachusetts to develop the Nation's first offshore wind project in federal waters in 2011.  Record of Decision ("ROD") at 2.[2]  After federal

---

[2] BOEM, Revolution Wind Farm and Revolution Wind Export Cable Project Construction and Operations Plan Record of Decision (Aug. 21, 2023), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Revolution-Wind-Record-of-Decision-OCS-A-0486_3.pdf (incorporated in FAC at 1 n.1).  In the FAC, Plaintiffs cited and provided links to various agency review documents and Project approvals.  *See* Dkt. 33.  In ruling on a Rule 12(b) motion, the Court may consider documents that are incorporated into a complaint by reference and matters of which the Court may take judicial notice.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

environmental review and extensive public engagement and outreach, Revolution Wind's predecessor in interest won the lease at auction in July 2013.  ROD at B-3 – B-4; *see* FAC ¶ 53. The Project, which is currently being constructed, consists of 65 Siemens Gamesa wind turbine generators ("WTGs"), two offshore substations, associated inter-array cabling between the WTGs, and an export cable to bring approximately 304 megawatts ("MW") of offshore wind capacity to Connecticut and approximately 400 MW to Rhode Island, all such capacity pursuant to five PPAs with utilities, awarded to Revolution Wind in competitive solicitations.  ROD at 9, 13, 23.  The Project is designed to contribute to Connecticut's mandate of 2,000 MW of offshore wind energy by 2030 and Rhode Island's 100% renewable energy goal by 2030.  Final Environmental Impact Statement ("FEIS"), ES-1 – ES-2.[3]  The WTGs and offshore substations are sited in federal waters within the area of the U.S. Outer Continental Shelf ("OCS") covered by BOEM Renewable Energy Lease No. OCS-A 0486, located in the Atlantic Ocean approximately 15 miles east of Block Island, Rhode Island, and almost 16 miles from Newport, Rhode Island.  FEIS at 1-1, 1-4, 3.10-17. Construction of the Project is ongoing.  *See* Order, Dkt. 50 at 1, 3.

## B.    Multi-Year Federal Review and Approval Processes

**OCSLA and NEPA**.  The environmental review process to support the Project took over six years.  Pursuant to OCSLA, Revolution Wind developed and submitted to BOEM a Site Assessment Plan, which BOEM approved in October 2017.  ROD at 3; FEIS at 1-2.  In March 2020, Revolution Wind prepared and submitted a detailed Construction and Operations Plan

---

(2007); *Hill v. Bd. of Tr. of the Univ. of D.C.*, 146 F. Supp. 3d 178, 183-84 (D.D.C. 2015); *Ctr. for Biological Diversity v. Haaland*, No. 22-CV-3588 (DLF), 2023 WL 5161741, at *4 n.5 (D.D.C. Aug. 11, 2023).

[3] BOEM, Revolution Wind Farm and Revolution Wind Export Cable Project Final Environmental Impact Statement (Jul. 2023), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Revolution_Wind_FEIS_Vol1-and-2.pdf (incorporated in FAC at 1 n.2); *see supra* note 2.

("COP") to BOEM, describing the planned facilities and construction and operation activities for the Project. FEIS at 1-2; *see* FAC ¶ 59. The Federal Defendants engaged in a comprehensive NEPA review of the Project. On April 30, 2021, BOEM issued a Notice of Intent to prepare an Environmental Impact Statement ("EIS") under NEPA for its review of the COP. ROD at 3; FAC ¶ 60; 86 Fed. Reg. 22,972 (Apr. 30, 2021). That notice began a more-than-two-year period of environmental review  by the federal government involving Revolution Wind, twelve federal agencies, three state and local cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry, to local communities, to tribes and historic preservation organizations. FEIS at A-2 – A-4, A-9 – A-17. BOEM published the availability of the draft EIS for the Project on September 2, 2022. ROD at 3; FAC ¶ 61; 87 Fed. Reg. 54,248 (Sept. 2, 2022). BOEM's review process included extensive consultations and public involvement; BOEM held three public scoping meetings where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS, as well as five additional public meetings during the public comment period on the draft EIS. ROD at B-15, B-23 – B-24; FEIS at A-16 – A-17. BOEM published the availability of the FEIS on July 21, 2023. ROD at 4; FAC ¶ 63; 88 Fed. Reg. 47,171 (Jul. 21, 2023).

On August 21, 2023, BOEM issued a ROD documenting the decision to approve Revolution Wind's COP, with some modifications. *See* ROD at 22-25. The Project is a "covered project" under FAST-41.[4] Consistent with that statute, on August 24, 2023, BOEM and NMFS published in the Federal Register a Notice of Availability of the ROD for the Revolution Wind Project ("FAST-41 NOA"). 88 Fed. Reg. 57,967 (Aug. 24, 2022); *see* FAC ¶ 234. The FAST-41

---

[4] FEIS at A-5, L-33; Fed. Permitting Improvement Steering Council, https://www.permits.performance.gov/permitting-project/fast-41-covered-projects/revolution-wind-farm-project (last visited July 18, 2024).

NOA provided notice of final agency action on the authorization for the Project, and documented the Department of the Interior's decision to approve the Project COP with certain modifications, including selection of Alternative G - Habitat and Viewshed Minimization Hybrid, which reduced the number of WTGs from 100, in Revolution Wind's COP, to 65. *Id*. at 57,968; ROD at 11, 13, 24. Consistent with this final decision, BOEM provided the Project a letter on November 17, 2023 confirming its approval of the COP with modifications. FAC ¶ 68.[5]

**NHPA.** BOEM aligned its NHPA compliance for the Project with NEPA public notice and comment. FEIS at A-13 – A-15. NHPA Section 106 requires federal agencies to take into account the effects of their undertakings on historic properties, and to afford the Advisory Council on Historic Preservation (the "Advisory Council") a reasonable opportunity to comment. 54 U.S.C. § 306108; 36 C.F.R § 800.1. NHPA Section 110(f) requires federal agencies, prior to approving an undertaking that "may directly and adversely affect" a National Historic Landmark ("NHL"), "to the maximum extent possible [to] undertake such planning and actions as may be necessary to minimize harm to" the NHL and afford the Advisory Council a reasonable opportunity to comment. 54 U.S.C. § 306107; 36 C.F.R. § 800.10. Both consulting parties and the public were provided extensive opportunity to participate and comment on the evaluation under the NHPA. FEIS Appendix A at A-13–A-15; ROD at 24.

On August 2023, after a series of consultations supported by detailed technical work, BOEM, the State Historic Preservation Officers for Connecticut, Rhode Island, New York, and Massachusetts, the Advisory Council, the U.S. Army Corps of Engineers, the Town of Aquinnah, Massachusetts, and Revolution Wind entered into a Memorandum of Agreement ("MOA")

---

[5] *See* BOEM, Letter to Revolution Wind (Nov. 17, 2023), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/COP%20Appv%20Ltr_REV%20OCS-A%200486.pdf; *see supra* note 2.

requiring avoidance, minimization, and mitigation measures to resolve adverse effects to historic properties. ROD at 24.

    **ESA.** BOEM and NMFS also undertook extensive ESA review of the Project. Section 7 of the ESA requires that each federal agency ensure that their actions are not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of designated critical habitat. *See* 16 U.S.C. § 1536(a)(2). On July 21, 2023, NMFS issued a Biological Opinion ("2023 BiOp") that assessed the potential effects of the Project on ESA-listed species and critical habitat, and concluded that the Project is not likely to jeopardize the continued existence of ESA-listed species and would have no effect on the critical habitat designated for the North Atlantic right whale and several other ESA-listed species. 2023 BiOp at 424.[6] The BiOp included an Incidental Take Statement pursuant to ESA Section 7(b)(4), 16 U.S.C. § 1536(b)(4), and enforceable mitigation measures and requirements to minimize impacts to listed species. *Id.* (Section 11.0 – Incidental Take Statement). On March 12, 2024, NMFS and BOEM reinitiated Section 7 consultation to address changes to the Project and new information affecting listed species. 2024 BiOp at 10;[7] *see* FAC ¶ 215. The reinitiated consultation concluded on April 30, 2024, when NMFS issued the operative 2024 BiOp, *see* FAC ¶ 216, which reached the same conclusions as the 2023 BiOp with respect to impacts on ESA-listed species and critical habitat. 2024 BiOp at 468-470, 473-474.

___

[6] NMFS, Endangered Species Act Biological Opinion for Construction, Operation, Maintenance, and Decommissioning of the Revolution Wind Offshore Energy Project (July 21, 2023), https://www.fisheries.noaa.gov/s3/2023-08/Rev-Wind-BiOp-Final-072123-508-Compliant.pdf (incorporated in FAC ¶ 213 n.325); *see supra* note 2.

[7] NMFS, Endangered Species Act Biological Opinion for Construction, Operation, Maintenance, and Decommissioning of the Revolution Wind Offshore Energy Project (Apr. 30, 2024), https://www.fisheries.noaa.gov/s3/2024-05/2024-Rev-Wind-BiOp-508.pdf (incorporated in FAC ¶ 216); *see supra* note 2.

**MMPA.**  In October 2021, Revolution Wind submitted an application to NMFS for the promulgation of five-year Incidental Take Regulations ("ITR") and associated Letter of Authorization ("LOA") for the incidental take of small numbers of marine mammals during the construction of the Project.  ROD at 26.  On March 21, 2022, NMFS published in the Federal Register a notice of receipt of Revolution Wind's application and held a 30-day public comment period.[8]  NMFS published a proposed rule on December 23, 2022, and held a 45-day public comment period.[9]  On October 20, 2023, NMFS published its final ITR.  *See* FAC ¶ 69.  On November 20, 2023, NMFS issued its LOA for the Project.[10]  NMFS' LOA includes over 30 pages of mitigation, monitoring, and reporting requirements.  LOA at 3-34.  The ITR and LOA authorize non-lethal incidental take of marine mammals by harassment, but do not authorize any take of right whales (or any marine mammals) by mortality or serious injury.  88 Fed. Reg. at 72,562; LOA at 2.

**CZMA.**  The Project complied with the requirements of the CZMA through the state consistency certification concurrences, which were not issued by any of the Federal Defendants. In June 2021, Revolution Wind submitted a CZMA federal consistency certification to the State of Rhode Island Coastal Resources Management Council ("RI CRMC"), as well as the relevant state agency in Massachusetts, for review for consistency with the enforceable policies in the

---

[8] NMFS, Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to the Revolution Wind Offshore Wind Farm Project Offshore Rhode Island, 88 Fed. Reg. 72,562 (Oct. 20, 2023).

[9] 88 Fed. Reg. at 72,563.

[10] NMFS, Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to the Revolution Wind Offshore Wind Farm Project Offshore Rhode Island, 88 Fed. Reg. 82,834 (Nov. 27, 2023); NMFS LOA for the Project, https://www.fisheries.noaa.gov/s3/2023-11/BL52-Revolution-Wind-LOA-OPR1-Final-signed-OPR1.pdf.  NMFS modified the LOA in May 2024.  *See* NMFS, Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to the Revolution Wind Offshore Wind Energy Project Offshore of Rhode Island, 89 Fed. Reg. 41,391 (May 13, 2024).

states' respective approved coastal management programs, in accordance with CZMA regulations at 15 C.F.R. § 930.57.  FEIS at A-3; *see also* 15 C.F.R. pt. 930, Subpart D.  Both state agencies thereafter concurred in that consistency certification under 15 C.F.R. § 930.62, with RI CRMC issuing its concurrence on May 12, 2023.  FEIS at A-8 – A-9; *see* FAC ¶ 288.

**CWA Section 404 and Rivers and Harbors Act ("RHA") Section 10.**  Revolution Wind submitted an application to the Army Corps on June 3, 2022.   On September 2, 2022, the Corps published a public notice for the Project allowing a 45-day public comment period, expressly soliciting comments on "whether to issue, modify, condition or deny a permit" under its authorities.[11]  On October 2, 2023, the USACE issued Revolution Wind an individual permit for the Project under two, distinct authorities—CWA Section 404 and RHA Section 10 ("USACE Permit").[12]  The USACE provided notice of this approval in the Federal Register on March 3, 2024.  89 Fed. Reg. 15,982 (Mar. 3, 2024).

The statute defines "navigable waters," for purposes of CWA Section 404, as "waters of the United States, including the territorial seas."   33 U.S.C. § 1362(7); *see also* 33 C.F.R. § 328.4(a); USACE Permit at 1.  The "territorial seas" are the waters generally extending seaward three nautical miles from the coast in direct contact with the open sea, but they may also extend elsewhere, such as bays, inlets, or three miles from islands.  33 U.S.C. § 1362(8) ("The term 'territorial seas' means the belt of the seas measured from the line of ordinary low water along that portion of the coast which is in direct contact with the open sea . . . extending seaward a distance

---

[11] *See* Army Corps Public Notice Announcement of Public Meetings and Request for Public Comment, https://www.nae.usace.army.mil/Portals/74/docs/regulatory/PublicNotices/2022/NAE-2020-00707-20220901-Public-Notice.pdf.

[12] USACE, CWA Section 404/RHA Section 10 Permit Issued to Revolution Wind, https://www.nae.usace.army.mil/Portals/74/docs/regulatory/2023%20Permits/20231003_Final_Signed_USACE_Permit.pdf?ver=gz46GRCgrUd_G-Kibeiwrg%3d%3d   (Oct.   2,   2023) (incorporated in FAC ¶ 261); *see supra* note 2.

of three miles"); 33 C.F.R. §§ 328.4(a), 329.12(a).  The Revolution Wind lease area lies on the OCS, approximately 15 nautical miles southeast of Point Judith, Rhode Island, well beyond the territorial sea as defined by the statute.  FEIS at 1-1, 1-4; ROD at 30.  USACE's statutory authority under CWA Section 404 extends only three miles from shore.

 **MBTA.**  BOEM analyzed the Project's impacts to birds and specifically addressed the MBTA.  FEIS at 3.7-3.  As described in the FEIS, a memorandum of understanding between BOEM and U.S. Fish and Wildlife Service required the agencies "to evaluate potential impacts to migratory birds and design or implement measures to avoid, minimize, and mitigate such impacts as appropriate."  *Id.*  Reflecting the Project's careful design and mitigation, the FEIS concluded the Project would have "minor" impacts on birds "as the effects would be small, and the resource would recover completely."  FEIS at 3.7-9.

 **C.** **Procedural History**

 On January 5, 2024, Plaintiffs sent a 60-day notice of intent to sue to certain of the Federal Defendants, alleging violations of OCSLA, the CWA, and the ESA, with respect to Revolution Wind ("January 5 Notice").  Dkt. 34-1.  Less than two weeks later, on January 16, 2024—more than four months after BOEM issued the ROD and when Project construction was already underway—Plaintiffs filed a complaint challenging separate federal approvals for both the South Fork Wind Project and the Revolution Wind Project.  *Green Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-00141-RCL, Dkt. 1 (D.D.C. Jan. 16, 2024).   On February 16, 2024, Plaintiffs sent what they have characterized as a "supplement" to the January 5 Notice, which included new signatories and new allegations under OCSLA and the ESA.  Dkt. 34-2.  Federal Defendants filed a motion to sever Plaintiffs' claims challenging Federal Defendants' South Fork Wind approvals from claims challenging Revolution Wind approvals, which this Court granted on April 10, 2024. Dkt. 25.  On April 18, 2024, Plaintiffs filed a Motion for Stay of Final Agency Action in an attempt

to stay the effective dates of the approvals and authorizations in the ROD and stop Revolution Wind from performing pile driving or other construction work authorized under the ROD, Dkt. 26, which Federal Defendants and Revolution Wind opposed, Dkts. 28-30.  On April 30, 2024, this Court issued a Memorandum and Order denying the Plaintiffs' motion due to their failure to meet and confer, as required by Local Civil Rule 7(m).  Dkt. 32.

On May 13, 2024, Plaintiffs filed their FAC in this case.  Dkt. 33.  On May 14, 2024, Plaintiffs filed a Motion for an Administrative Stay or Preliminary Injunction, once again attempting to stay the effective dates of the approvals and authorizations in the ROD and stop ongoing Project construction, Dkt. 35, which Federal Defendants and Revolution Wind again opposed, Dkts. 37-39.  Plaintiffs obtained an extension and then filed a motion for leave to file a reply and supplemental declarations, which Federal Defendants and Revolution Wind opposed. Dkts. 41, 43, 47, 48.  On June 24, 2024, this Court issued a Memorandum Opinion and Order denying Plaintiffs' Motion for a Stay or Preliminary Injunction for failure to establish a sufficient likelihood of standing, and denying Plaintiffs' motion for leave to file a reply and supplemental declarations.  Dkts. 49, 50.

Revolution Wind timely files this motion to dismiss.  *See* Dkt. 25 at 11 (granting Revolution Wind intervention and requiring Revolution Wind to file an answer or other responsive pleading within 60 days of Plaintiffs filing their amended complaint); Dkt. 52 at 1 (extending deadline to July 19, 2024).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss for lack of subject matter jurisdiction.  Plaintiffs bear the burden of demonstrating the Court's subject matter jurisdiction over their claims.  *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  Moreover, "at the pleading stage, the plaintiff must clearly allege facts demonstrating each element" of Article

III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Rule 12(b)(1) governs a motion to dismiss for lack of standing because challenges to standing concern threshold questions of subject matter jurisdiction. *See*, *e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998); *Saline Parents v. Garland*, 88 F.4th 298, 303-04 (D.C. Cir. 2023); *Haase v. Sessions*, 835 F. 2d 902, 906 (D.C. Cir. 1987) ("the defect of standing is a defect in subject matter jurisdiction").

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). A plaintiff must provide the grounds for relief, and not just "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When deciding a motion to dismiss under Rules 12(b)(1) or 12(b)(6), the court may consider documents that are incorporated in a complaint by reference and matters of which the court may take judicial notice. *See*, *e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Hill v. Bd. of Tr. of the Univ. of D.C.*, 146 F. Supp. 3d 178, 183-84 (D.D.C. 2015); *Ctr. for Biological Diversity v. Haaland*, No. 22-CV-3588 (DLF), 2023 WL 5161741, at *4 n.5 (D.D.C. Aug. 11, 2023). Here, Plaintiffs cited and provided links in the FAC to various agency review documents and Project approvals. *See generally* FAC, Dkt. 33. These materials have been incorporated into the FAC and so the Court may properly consider them in connection with this Motion.

IV.    **ARGUMENT**

A.    <u>**Plaintiffs Have Failed to Adequately Plead Standing**</u>

Plaintiffs fail to carry their burden to allege facts sufficient to establish any of the elements of standing for any of their claims.  As a result, the Court lacks jurisdiction, and all of Plaintiffs' claims in the FAC must be dismissed pursuant to Rule 12(b)(1).  *See, e.g., Marino v. Nat'l Oceanic & Atmospheric Admin*., 33 F.4th 593, 596 (D.C. Cir. 2022) (affirming dismissal of MMPA claim for failure to plead redressability).  A plaintiff must plead facts sufficient to show all three elements of Article III standing: (1) injury-in-fact; (2) a "causal connection between the injury and the conduct complained of;" and (3) a likelihood that the alleged injury "will be 'redressed by a favorable decision.'"  *See Lujan v. Defs. of Wildlife*, 504 U.S. at 560-61.  "Standing is not dispensed in gross" and thus must be established in every case "claim by claim."  *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017).  Moreover, as to at least the property-specific NEPA and NHPA claims, each Plaintiff alleges its own, property-specific claims, so their claims are not "identical," and a finding of standing for one Plaintiff is not sufficient for the remainder.  *See Booth v. Bowser*, 597 F. Supp. 3d 1, 12 (D.D.C. 2022).

The FAC directly references standing in only a single, conclusory statement that is plainly insufficient: "Plaintiffs have standing because they are injured in fact by the federal Defendants' actions or omissions, and this court has the power to redress those injuries."  FAC ¶ 35.  The other scattered allegations within the FAC (discussed below) are similarly insufficient.  Even if the Court were to consider the two declarations filed with Plaintiffs' May 14, 2024, Motion for an Administrative Stay or Preliminary Injunction (Dkt. 35)[13]—which the Court need not on this

---

[13] Plaintiffs offered just two declarations with their motion, attempting to support standing as to just one individual (Elizabeth Quattrocki Knight) and two organizations (Green Oceans and Save

motion to dismiss, *see Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987)— Plaintiffs have failed to carry their burden to establish standing to bring their claims. Indeed, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (citation omitted). No Plaintiff has adequately alleged standing for any, much less every, claim here.

To establish individual standing, a plaintiff must adequately allege an injury to herself that meets all three elements for standing: injury-in-fact, causation, and redressability. *See Lujan*, 504 U.S. at 560-61. To establish organizational standing, an organization must demonstrate that it meets the standing requirements itself. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). "[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved.'" *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Given the large number of Plaintiffs and scarcity of allegations identifying or tracing an alleged injury to any of them, this Motion attempts to group the Plaintiffs by potential type of injury (currently implied, at best) to show why dismissal for lack of standing is warranted. The three asserted types of injuries are related to: (1) interests in wildlife (whales, fish, lobster, bats,

---

Right Whales Coalition ("SRWC")). *See* Declaration of Elizabeth Quattrocki Knight ("Quattrocki Knight Decl.") (on behalf of herself and Green Oceans), Dkt. 35-4; Declaration of Lisa Linowes ("Linowes Decl.") (on behalf of SRWC), Dkt. 35-3. Yet neither declaration adequately supports individual, representative, or organizational standing as to any Plaintiff, as the Court has already found. *See* Order, Dkt. 50 at 12-13.

and birds);[14] (2) recreation activities (sailing and aviation);[15] and (3) ownership of historic properties.[16]  Any other potential interest or harm referenced in passing is so far removed from plausibility that it need not be analyzed under all three factors as below.[17]  For the reasons discussed below, none of the Plaintiffs have sufficiently alleged facts supporting standing to bring any of their claims—either for themselves or an organization.

### 1.    Plaintiffs Have Not Adequately Alleged An Injury-In-Fact

To establish injury-in-fact, a plaintiff must prove "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).  As a preliminary matter, Plaintiffs purport to have standing based purely on a procedural harm.  *See* FAC ¶ 35 ("Plaintiffs have standing because they are injured in fact by the federal Defendants' actions or omissions").  However, mere disagreement with Federal Defendants' analyses (here, regarding each of the three purported types of harm) does not constitute Article III injury-in-fact because Plaintiffs do not

---

[14] These Plaintiffs (collectively, the "Wildlife Plaintiffs") include: Green Oceans, Responsible Offshore Development Alliance, Save Right Whales Coalition, New England Fishermen's Stewardship Association, Bat World Sanctuary, ACK for Whales, Chris Brown, Ralph Craft, Rich Hittinger, Elizabeth Quattrocki Knight, Gary Mataronas, Eric Philippi, and Alan Shinn.  *See* FAC ¶¶ 1-8, 10, 12, 13, 14, 16.

[15] These Plaintiffs (collectively, the "Recreation Plaintiffs") include: Murray Danforth, Lauren Knight, and Benjamin Riggs.  *See* FAC ¶¶ 9, 11, 15.

[16] These Plaintiffs (collectively, the "Property Plaintiffs") include: the Ocean Drive property owners, *id.* ¶ 17, Charlotte DuHamel, *id.* ¶ 18, the Warren's Point property owners, *id.* ¶ 19, Veter et Nova Trust, *id.* ¶ 20, the Indian Avenue property owners, *id.* ¶ 21, and the Bellevue Avenue property owners, *id.* ¶ 22.

[17] For example, there is a passing reference to purported impacts to "national security and military uses of the Outer Continental Shelf."  FAC ¶ 133.  But there is no colorable argument that Plaintiffs may bring an OCSLA claim on behalf of the U.S. military or government.  Similarly, Plaintiffs claim "BOEM violated OCSLA by failing to ensure a fair return to the United States" in its offshore lease rates.  *Id.* ¶ 138.  But Plaintiffs have no conceivable interest in this alleged violation beyond "taxpayer standing," which the U.S. Supreme Court has long disallowed (subject to exceptions not relevant here).  *See, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *Flast v. Cohen*, 392 U.S. 83 (1968).

allege a concrete interest affected by the alleged deprivation of a procedural right.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."); *Delaware Dep't of Nat. Res. & Env't Control v. FERC*, 558 F.3d 575, 579 (D.C. Cir. 2009) (dismissing claim alleging procedural violation of CZMA for lack of a substantive interest).

### a.    Wildlife Plaintiffs

The FAC does not adequately allege *any* injury to *any* Wildlife Plaintiff personally, much less a particularized one.  And the Quattrocki Knight Declaration and the Linowes Declaration are similarly insufficient to establish injury in fact, as the Court explained in concluding Plaintiffs had not established likelihood of standing for a stay or preliminary injunction.  *See* Order, Dkt. 50 at 11-13.  Although the individual Wildlife Plaintiffs claim general interests in commercial fishing, whale watching, and conservation, *see, e.g.*, FAC ¶¶ 7, 10 (commercial fisher), 8 (fishing supply store owner), 16 (operator of New Jersey fishing/whale watching company), 14 ("steward of the endangered piping plover" without any alleged connection to the Project site), none has alleged concrete plans to fish or whale watch in or near the Project site and none has alleged a specific injury supporting standing for Plaintiffs' claims.  *See Lujan*, 504 U.S. at 564; *Save Long Beach Island v. U.S. Dep't of Com.*, No. 3:23-cv-01886-RK-JBD, 2024 WL 863428, at *9 (D.N.J. Feb. 29, 2024); *Green Oceans v. U.S. Dep't of the Interior*, No. 1:24-CV-00141-RCL, 2024 WL 3104945, at *5 (D.D.C. June 24, 2024) (denying motion for stay or preliminary injunction for failure to establish standing where "the alleged harm to Cox Ledge and its wildlife does not automatically translate to concrete injury to plaintiffs")*.*  Moreover, the Plaintiffs involved in commercial fishing and whale watching operations purport to have standing based on economic interests that are not cognizable under NEPA.  *See, e.g., Gunpowder Riverkeeper v. FERC*, 807

F.3d 267, 274 (D.C. Cir. 2015) ("[T]he zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone.").[18]

The organizational Wildlife Plaintiffs do not have representational[19] or organizational standing either.  To show injury-in-fact to an organization, a plaintiff "must allege more than a frustration of its purpose because frustration of an organization's objectives 'is the type of abstract concern that does not impart standing.'"  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted).  To determine whether the organization suffered "concrete and demonstrable injury" to its activities, the court will "ask, first, whether the agency's action or omission to act injured the [organization's] interest and, second, whether the organization used its resources to counteract that harm."  *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093-94 (D.C. Cir. 2015) (internal quotation marks omitted).

Like the individuals, the organizational Wildlife Plaintiffs fail to allege cognizable harm. Their bare allegations reflect, at best, only "generalized grievances" by concerned citizens that "are not cognizable in the federal courts."  *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 616 (1989); *see also Am. Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 98 (D.D.C. 2000); FAC ¶¶ 1-6. Some allege nothing more than an "animal nexus" that the Supreme Court has expressly rejected. *See Lujan*, 504 U.S. at 566-67; FAC ¶ 5 (Texas bat organization with no alleged connection, even to the East Coast).  Even for the organizations that appear to operate in this region, there are no

---

[18] A district court already held that Plaintiff Responsible Offshore Development Alliance lacked standing to challenge the approvals for another offshore wind farm.  *See Seafreeze Shoreside Inc. v. U.S. Dep't of the Interior*, No. 1:22-cv-11091-IT, 2023 WL 6691015 (D. Mass. Oct. 12, 2023) (currently on appeal to 1st Circuit (No. 23-2051)).

[19] No further analysis of representational standing is required because the record is devoid of relevant information about the organizations' members.  Green Oceans' President, psychiatrist Elizabeth Quattrocki Knight, is also an individual plaintiff, but, as the Court already determined, the Quattrocki Knight Declaration provides no basis for the Court to find she has standing even for herself.  *See* Order, Dkt. 50 at 11, 13.

allegations that Wildlife Plaintiffs' activities have been "impeded" in any way by the Project or the challenged Project authorizations.  The extensive public process conducted by Federal Defendants resulted in a Project that is legally required to comply with extensive avoidance, mitigation, monitoring, and reporting requirements related to marine mammals and protections for benthic habitat and other wildlife.  *See supra* Section II.B.  None of the challenged approvals prevents any Wildlife Plaintiffs' advocacy or educational missions and the organizations have failed to demonstrate a direct injury from those approvals.  *See, e.g., Save Long Beach Island,* 2024 WL 863428, at *9 (dismissing challenge by plaintiffs against NMFS approvals, finding "a dearth of allegations in the Complaint that demonstrate a direct injury to [p]laintiffs apart from their alleged 'special interest' in marine mammals").

### b.    Recreation Plaintiffs

All three Recreation Plaintiffs fail to adequately allege a cognizable injury (nor did they submit a declaration).  First, Lauren Knight does not allege any harm to herself at all, *see* FAC ¶ 11, and there is no allegation that recreational sailors cannot sail around or even through the Project site (*i.e.*, between WTGs that are spaced 1 nautical mile apart).  Second, Murray Danforth's conclusory assertion that his "flights are made more dangerous by the construction and operation of the turbines," *id.* ¶ 9, is insufficient to establish even a minimal restriction on recreational aviation; there is no allegation contesting the fact that aircraft can safely overfly WTGs at a reasonable altitude.  Third, Benjamin Riggs's alleged concern about "his view of the ocean and recreational activities" which appear to be in relation to plane flights, *id.* ¶ 15, is too general to confer standing.  *See ASARCO*, 490 U.S. at 616.

### c.    Property Plaintiffs

Property Plaintiffs similarly fail to allege a cognizable injury.  As to historic properties, Plaintiffs: (1) describe the properties, *see* FAC ¶¶ 291-96; and (2) allege bare procedural violations

of the NHPA, *see id.* ¶¶ 297-311.  There is no allegation whatsoever of purported harm to Property Plaintiffs or their properties.  Standing cannot lie on such bare procedural allegations without any allegation of cognizable injury.  Although in their OCSLA claim (at FAC ¶ 157), Plaintiffs assert, "[t]he sight of the turbines on the horizon will decrease property values and rental incomes in coastal communities," this allegation, which is vague even as to OCSLA, and appears in a section alleging interference with "recreation and tourism," is plainly insufficient to support a particularized injury *under the NHPA* to *any* property-specific NHPA claimant.  *Compare id.* ¶ 157 *with* ¶¶ 291-96.  To the extent Property Plaintiffs rely on this allegation or theory of injury for their NHPA claims, such conjecture about the future impact of the purported visibility of WTGs on property values is too speculative to support standing.  *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) ("[t]here is a difference between accepting a plaintiff's allegations of fact as true and accepting as correct the conclusions plaintiff would draw from such facts"); *Chamber of Com. of U.S. v. E.P.A.*, 642 F.3d 192, 200 (D.C. Cir. 2011) ("Allegations of possible future injury do not satisfy the requirements of Art. III[;] [a] threatened injury must be certainly impending to constitute injury in fact." (alterations in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Moreover, to the extent Property Plaintiffs may argue they were improperly omitted from the NHPA consultation process, the NHPA does not entitle every property owner to be a consulting party and thus Property Plaintiffs cannot have been injured in this way.  *See, e.g., Appalachian Voices v. FERC*, No. 17-1271, 2019 WL 847199, at *3 (D.C. Cir. Feb. 19, 2019) ("To the extent that any of the non-Tribal Historic Preservation Officer petitioners claim FERC's refusal to grant them consulting party status violated the NHPA or due process, that claim fails because there is no indication that the NHPA regulation in question—which provides only that certain individuals

or entities 'may' participate in the section 106 process as consulting parties, 36 C.F.R. §
800.2(c)(5)—creates a property interest or other 'legitimate claim of entitlement.'") (citation
omitted).

In short, no Plaintiff has adequately alleged the requisite injury to support a finding of
standing.

### 2.    Plaintiffs Have Not Established Causation or Redressability

Even if they had alleged cognizable injuries (they have not), Plaintiffs fail to establish
causation or redressability for any such harms.  When alleging a procedural violation, a plaintiff
must show "that the particularized injury that the plaintiff is suffering is fairly traceable to the
agency action that implicated the procedural requirement in question." *Waterkeeper Alliance, Inc.
v. Regan*, 41 F.4th 654, 663-64 (D.C. Cir. 2022) (citation omitted) (cleaned up).  All Plaintiffs fail
to do so.  Further, redressability exists only where the requested relief would remedy a plaintiff's
alleged injury directly.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973); *Pub. Citizen v.
Foreman*, 471 F. Supp. 586, 590 (D.D.C. 1979) ("[A] plaintiff must show 'an injury to himself
that is likely to be redressed by a favorable decision.'") (citation omitted).  Here, Plaintiffs
additionally fail to show any purported injury would be redressable by the relief they seek from
this Court, and, therefore, Plaintiffs' FAC should be dismissed.  *See Marino*, 33 F.4th at 599.

### a.    Wildlife Plaintiffs

Wildlife Plaintiffs fail to establish that their alleged injuries are fairly traceable to the
actions of Federal Defendants, as opposed to the "independent action of some third party not before
the court." *Lujan*, 504 U.S. at 560 (citation omitted); *see also NO Gas Pipeline v. FERC*, 756 F.3d
764, 768 (D.C. Cir. 2014).  For example, Plaintiffs allege, "[s]ince 2017, the North Atlantic Right
Whale has been experiencing an Unusual Mortality Event", FAC ¶ 238, but the Project's
construction did not begin until years later.  Indeed, it is well established within the scientific

community that vessel strikes and entanglements with fishing gear are the primary source of whale mortality.  *See* FAC ¶ 119 (citing NMFS BiOp).  As a result, Plaintiffs have failed to demonstrate that the challenged agency actions are the legally relevant cause of their purported harms.

Wildlife Plaintiffs also fail to allege redressability.  For example, as to right whales, Plaintiffs state, "[t]he North Atlantic right whale is extremely close to extinction, easily susceptible to stress and chronic injuries from construction, vessel strikes, or entanglements, and has an incredibly low reproductive rate."  FAC ¶ 119.  All of this was true before the Project's construction began; indeed, Plaintiffs' cited source for that quote was the Project's biological opinion, performed in advance of the Project's approval.  *See id.*  Plaintiffs do not allege the right whale's population decline will halt, much less reverse, if the Court orders additional studies or even if it vacates Project approvals.

b.   <u>Recreation Plaintiffs</u>

Even if Recreation Plaintiffs had alleged any cognizable injury, any alleged cumulative harm is not traceable to the Project at issue here, as Plaintiffs concede.  *See*, *e.g.*, FAC ¶ 137 ("The combined effects of the thousands of turbines on the Outer Continental Shelf will create high radar reflectivity, doppler-spread interference, multipath and range ambiguous concerns, and strong reflected signals.").  As with Wildlife Plaintiffs, Recreation Plaintiffs have not established that their very general alleged injury is "likely to be redressed by a favorable decision."  *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976).  And their alleged cumulative harm could not be redressed by a decision as to this Project alone.  *See*, *e.g.*, FAC ¶ 137.

c.   <u>Property Plaintiffs</u>

Similarly, Property Plaintiffs fail to identify any injury, let alone any causal link between an injury and the challenged agency actions.  That Plaintiffs own property eligible for listing on the National Register of Historic Places or in a landmark district is insufficient.  FAC ¶¶ 17-22,

20

291-96.  Moreover, Property Plaintiffs offer no allegations as to redressability in the FAC.  This is not surprising because, as above, Property Plaintiffs do not adequately allege an adverse impact, so there is nothing to redress.

For the reasons above, Plaintiffs fail to allege adequately any, much less every, element of standing—for each of their claims.

### 3. Plaintiffs Fail to Allege at Least One Plaintiff Has Standing to Bring Each of Their Nine Claims

The foregoing analysis demonstrates how Plaintiffs fail to satisfy the elements for standing—regardless of what claim is at issue.  In addition, Plaintiffs have failed to show that at least one of them has standing for each of the nine claims in their FAC.  *See Elec. Priv. Info. Ctr.*, 878 F.3d at 377 (standing must be established "claim by claim").  Indeed, only one of the nine claims (the NHPA claim, cause of action nine) actually references any particular Plaintiff.  *See* FAC ¶¶ 291-96.  And there are no allegations connecting any claims to the zones of interests protected by the nine different statutes implicated in the FAC as brought.  *See, e.g.*, *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012).

*First*, Wildlife Plaintiffs appear to be the only Plaintiffs asserting an interest relevant to the ESA or CWA claims (the fourth and seventh causes of action, respectively).  But because Wildlife Plaintiffs lack standing, for the same reasons this Court concluded in denying Plaintiffs' request for a stay or preliminary injunction, *see* Order, Dkt. 50, these claims must be dismissed.

*Second*, Property Plaintiffs are the only Plaintiffs who reference interest in historic properties potentially relevant to their NHPA claim (the ninth cause of action).  However, because Property Plaintiffs lack standing, *see supra* Sections IV.A.1.c, IV.A.2.c, the NHPA claim must be dismissed.

*Third*, the Wildlife Plaintiffs appear to be the only Plaintiffs with a general interest in protected species potentially relevant to MMPA and MBTA claims (the fifth, and sixth causes of action).  But these claims should be dismissed because Wildlife Plaintiffs lack standing, *see supra* Sections IV.A.1.a, IV.A.2.a —including for failure to allege a sufficient connection to the species at issue, as the Court previously stated with respect to the ESA claim.  *See* Order, Dkt. 50 at 12 ("Plaintiffs' declarations do not demonstrate that any effect the Project may have on North Atlantic Right Whales would cause individualized harm to any plaintiff or member of a plaintiff organization.").

*Fourth*, if Plaintiffs argue some combination of Wildlife Plaintiffs and/or Recreation Plaintiffs purport to have standing to bring the OCSLA and CZMA claims (the second and eighth causes of action), those claims too must be dismissed because all of those Plaintiffs lack standing, *see supra* Sections IV.A.1.a, IV.A.1.b, IV.A.2.a, IV.A.2.b—including for failure to allege a sufficient connection to the Cox Ledge area, as the Court previously stated with respect to the CWA claim.  *See* Order, Dkt. 50 at 10 ("the alleged harm to Cox Ledge and its wildlife does not automatically translate to concrete injury to plaintiffs.").

*Finally*, as to the remainder of the claims, because no Plaintiff has adequately alleged standing, *see supra* Sections IV.A.1, IV.A.2, the remaining APA and NEPA claims (the first and third causes of action) must be dismissed.

For the foregoing reasons, Plaintiffs fail to adequately plead standing as to any of their nine claims in their FAC.

**B.**     **Plaintiffs Fail to Plead the Requisite Participation in the Administrative Processes for Certain Claims**

    **1.**     **Plaintiffs Do Not Allege Their CWA Arguments Were Raised During USACE's Administrative Process and Therefore Waived Their CWA Claims**

Plaintiffs fail to plead the requisite facts in their FAC, *see* ¶¶ 253-81, to show their CWA claims have not been waived due to failure to raise these concerns during USACE's public comment period. *See, e.g.*, *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764-65 (2004) (by failing to raise "particular objections" to agency action during administrative process, plaintiffs "forfeited any objection" on those grounds). In general, parties challenging an agency's compliance with its legal duties must "'structure their participation so that it . . . alerts the agency to the [parties'] position and contentions,' in order to allow the agency to give the issue meaningful consideration." *Id.* at 764 (alterations in original) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978)).

In their FAC, Plaintiffs argue with respect to CWA Section 404 that: (1) the USACE "erroneously interprets" the CWA "to allow discharges into navigable waters that occur more than three miles from the coastline," FAC ¶¶ 258-61; (2) the USACE "erroneously failed to apply its regulations to Cox Ledge, a special aquatic site," *id.* ¶¶ 262-65; (3) "the Project's discharge of dredge and fill materials will cause unacceptable adverse impacts in navigable waters," *id.* ¶¶ 266-69; (4) the USACE "failed to consider practicable alternatives to the Revolution Wind proposal," *id.* ¶¶ 270-73; (5) the USACE "failed to consider the cumulative effects of other offshore wind projects," *id.* ¶¶ 274-77; and (6) the USACE "approved permits that will significantly degrade the waters of the United States," *id.* ¶¶ 278-81. Plaintiffs do not allege in their FAC that they or others raised the issues in Plaintiffs' CWA claims to the USACE during the agency's public comment period. *See* FAC ¶¶ 253-81 (CWA claims). Here, the USACE received four comments in response

to its public notice—none from any of the Plaintiffs and none that raise the arguments that Plaintiffs make in their FAC. *See* ROD at 32-34 (describing comments made to USACE in the administrative process). Therefore, Plaintiffs failed to plead sufficient facts to show their CWA claims have not been waived for failure to raise them as part of USACE's administrative process. *See Healthy Gulf v. U.S. Army Corps of Eng'rs*, 81 F.4th 510, 521-26 (5th Cir. 2023) (holding petitioners waived argument against USACE permit because the parties failed to raise it in a timely fashion during USACE's comment period, even though they belatedly raised it to another agency).[20]

### 2.    Plaintiffs Do Not Allege Facts Sufficient to Satisfy FAST-41 Administrative Process Participation Requirements

Under FAST-41's limitations on claims provision, "a claim arising under Federal law seeking judicial review of any authorization issued by a Federal agency for a covered project shall be barred unless . . . B) in the case of an action pertaining to an environmental review conducted under NEPA-(i) *the claim is filed by a party that submitted a comment during the environmental review*; and (ii) *any commenter filed a sufficiently detailed comment* so as to put the lead agency on notice of the issue on which the party seeks judicial review, or the lead agency did not provide a reasonable opportunity for such a comment on that issue." 42 U.S.C. § 4370m-6(a)(1)(B) (emphasis added). Because the Project is a "covered project" under FAST-41, *see supra* Section II.B, Plaintiffs must satisfy these statutory requirements. Plaintiffs' FAC alleges that two of the 45 total number of Plaintiffs submitted comments to BOEM during the NEPA process for the Project. *See* FAC ¶¶ 1 (Green Oceans), 12 (Elizabeth Quattrocki Knight). However, it does not

---

[20] Even if it was sufficient for these CWA issues to be raised in comments to BOEM during the NEPA process (it is not), *see Healthy Gulf*, 81 F.4th at 522, Plaintiffs do not plead sufficient facts to show their particular CWA claims were raised in comments to BOEM on the draft EIS either, *see* FAC ¶¶ 253-81.

appear Plaintiff Green Oceans actually submitted comments to BOEM, whereas Plaintiffs Elizabeth Quattrocki Knight, Responsible Offshore Development Alliance, and Benjamin Riggs did. *See* FEIS at L-3 – L-7 (listing commenters on DEIS). FAST-41 bars claims from all other Plaintiffs that did not submit a comment during the Project's environmental review. *See* 42 U.S.C. § 4370m-6(a)(1)(B)(i). In addition, for the many issues Plaintiffs raise in their FAC, there is no allegation that "any commenter filed a sufficiently detailed comment so as to put the lead agency on notice." 42 U.S.C. § 4370m-6(a)(1)(B)(ii).

### C. Plaintiffs Did Not Provide 60-Day Notice under OCSLA Before Bringing their Lawsuit

OCSLA requires that, before filing a citizen suit, a plaintiff must first send a 60-day notice to the defendant federal agency describing its claims. *See* 43 U.S.C. § 1349(a)(2) (OCSLA). Notice "is a mandatory, not optional, condition precedent for suit." *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989) (interpreting similar notice provision in the Resource Conservation and Recovery Act); *see also Safari Club Int'l v. Jewell*, 960 F. Supp. 2d 17, 78 (D.D.C. 2013) (ESA's similar "sixty-day notice requirement is mandatory and jurisdictional") (internal quotations and citations omitted). The purpose of the notice is to allow the agency "an opportunity to bring itself into complete compliance . . . and thus likewise render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987) (discussing similar CWA 60-day notice requirement). Accordingly, the notice must be submitted 60 days *before* filing the lawsuit and it must be sufficiently detailed. *See, e.g.*, *Duke Energy Field Servs. Assets, LLC v. Fed. Energy Regul. Comm'n*, 150 F. Supp. 2d 150, 154-55 (D.D.C. 2001). An inadequate notice under these statutes requires dismissal of the those claims. *See, e.g.*, *id.* (dismissing OCSLA claim because plaintiffs' purported notice failed to comply with OCSLA "under oath" notice requirements).

Plaintiffs submitted two notices of intent to sue Federal Defendants over the Project's approvals—one on January 5, 2024, and one on February 16, 2024. *See* January 5 Notice, Dkt. 33-1; February 16 Notice, Dkt. 33-2. Both notices fail to satisfy OCSLA's statutory requirement that the notice be "in writing under oath" because neither letter is notarized by a notary public nor avers information under penalty of perjury. *See* January 5 Notice, Dkt. 33-1; February 16 Notice, Dkt. 33-2; 43 U.S.C. § 1349(a)(2) (under OCSLA citizen suit provision "no action may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation, *in writing under oath*, to the Secretary and any other appropriate Federal official, to the State in which the violation allegedly occurred or is occurring, and to any alleged violator" (emphasis added)); *see also Duke Energy Field Servs. Assets, LLC*, 150 F. Supp. 2d at 154-55 ("The 'under oath' requirement of section 1349(a)(2) is an overt and unambiguous component of a plaintiff's duties under the citizen suit provision. As such, its meaning must be given its full effect."). Failure to comply with the statutory "under oath" requirement of OCSLA requires dismissal of all of Plaintiffs' OCSLA claims.

### D. Plaintiffs Fail to Plead a Claim For Relief Under the MBTA

Plaintiffs fail to state a claim upon which relief can be granted under the MBTA, *see* FAC ¶¶ 248-52, and therefore their Sixth Cause of Action must be dismissed pursuant to Rule 12(b)(6). Plaintiffs assert that, "[b]ecause the Revolution Wind Project will take migratory birds . . . Defendants' approval of the Project is arbitrary, capricious, and not in accordance with the law" and "[t]his approval should therefore be invalidated and set aside." FAC ¶ 252. But this Court has held a federal agency's approval of a third-party activity that may "take" birds under the MBTA is not a violation of that statute. *See Pub. Emps. for Env't Resp. v. Beaudreau*, 25 F. Supp. 3d 67, 117 (D.D.C. 2014), *appeal dismissed sub nom. Pub. Emps. for Env't Resp. v. Cruickshank*, No. 14-5117, 2014 WL 3014869 (D.C. Cir. June 11, 2014) ("Given the statutory and regulatory

text, the Court finds that the BOEM did not violate the Migratory Bird Treaty Act by merely approving a[n offshore wind] project that, if ultimately constructed, might result in the taking of migratory birds."); *Friends of the Cap. Crescent Trail v. Fed. Transit Admin.*, 255 F. Supp. 3d 60, 75 (D.D.C. 2017) (rejecting a similar argument that federal funding of a transportation project implicated the MBTA stating "[t]he Court is unaware of any decision in our Circuit holding that the MBTA's take prohibition extends to a federal agency that authorizes third-party activity that may allegedly cause 'take'"); *see also Protect Our Cmtys. Found. v. Jewell*, 825 F.3d 571, 585 (9th Cir. 2016) ("the MBTA does not contemplate attenuated secondary liability on agencies . . . that act in a purely regulatory capacity, and whose regulatory acts do not directly or proximately cause the 'take' of migratory birds, within the meaning of [the MBTA]").  Plaintiffs therefore fail to state a claim under the MBTA.

### E.    Plaintiffs Fail to Plead a Claim For Relief Under the CZMA

Similarly, Plaintiffs fail to state a claim upon which relief can be granted under the CZMA, *see* FAC ¶¶ 282-89, and therefore their Eighth Cause of Action under the CZMA must be dismissed pursuant to Rule 12(b)(6).  Plaintiffs allege that "[b]ecause BOEM's approval of the Revolution Wind Project is inconsistent with the requirements of Rhode Island's Special Area Management Plan, the approval constitutes final agency actions that is [sic] arbitrary, capricious, and otherwise not in accordance with the law" and "should therefore be invalidated and set aside by this Court."  FAC ¶ 289.  However, Plaintiffs do not allege any action by Federal Defendants that constitutes a violation of the CZMA.

In June 2021, Revolution Wind submitted a CZMA federal consistency certification to the relevant state agencies in Rhode Island and Massachusetts, for review for consistency with the approved, enforceable policies in the states' respective coastal management programs, in accordance with CZMA regulations at 15 C.F.R. § 930.57.  *See supra* Section II.B; FEIS at A-3;

*see also* 15 C.F.R. pt. 930, Subpart D.  Both state agencies thereafter concurred in that consistency certification under 15 C.F.R. § 930.62.  *See supra* Section II.B; FEIS at A-8, A-9.

First, the CZMA does not provide a private right of action.  *See, e.g., George v. NYC Dep't of City Planning*, 436 F.3d 102, 103-04 (2d Cir. 2006) (the CZMA "affords no private right of action"); *George v. Evans*, 311 F. App'x 426, 428 (2d Cir. 2009) ("The CZMA does not entitle plaintiffs to assert a private cause of action against the federal, state, city, or private defendants."). Second, Plaintiffs fail to state a claim for a CZMA violation under the APA because Plaintiffs fail to identify any *federal* agency action that allegedly violated the CZMA, *see* FAC ¶¶ 281-88, and therefore Plaintiffs' Eighth Claim relating to alleged CZMA violations must be dismissed.  *See, e.g., George*, 311 F. App'x at 429 (affirming dismissal of plaintiff's "ill-defined" CZMA claim under the APA for failure to identify a federal agency action that could be subject to judicial review); *see also* 15 C.F.R. §§ 930.63, 930.64; 16 U.S.C. § 1456(c)(3)(A).

## V.    CONCLUSION

For the foregoing reasons, Revolution Wind respectfully requests that the Court dismiss Plaintiffs' FAC with prejudice.

Dated:  July 19, 2024                    Respectfully submitted,

By */s/ Janice M. Schneider*

Janice M. Schneider (D.C. Bar No. 472037)
Stacey L. VanBelleghem (D.C. Bar No. 988144)
Devin M. O'Connor (D.C. Bar No. 1015632)
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, D.C. 20004
Tel:  (202) 637-2200
Fax:  (202) 637-2201
Email: janice.schneider@lw.com
         stacey.vanbelleghem@lw.com
         devin.o'connor@lw.com

*Counsel for Defendant-Intervenor*
*Revolution Wind, LLC*

29