| | |
|---|---|
| GREEN OCEANS, et al.,<br>*Plaintiffs,*<br>*v.*<br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br>*Federal Defendants*,<br>*and*<br>REVOLUTION WIND, LLC,<br>*Intervenor-Defendant.* | Case No. 1:24-cv-00141-RCL<br>Hon. Royce C. Lamberth |

**DECLARATION OF MICHAEL D. OLSEN**

I, Michael D. Olsen, declare as follows:

1. I currently serve as the Acting Director of the Marine Minerals Administration (MMA) in the Department of the Interior. I also serve as the Associate Deputy Secretary for the Department of the Interior. As a part of my responsibilities in MMA, I oversee MMA's implementation of the Department's policies for Outer Continental Shelf resources, including renewable energy. Prior to the creation of the MMA, the Bureau of Ocean Energy Management (BOEM) was the entity within the Department of the Interior responsible for issuing wind energy leases and approving plans on those leases. Secretary's Order 3451 established the Marine Minerals Administration, which replaced BOEM, and provided for a transition period during which existing BOEM officials retained operational authority necessary for the uninterrupted accomplishment of its mission. That transition period is ongoing.

2. BOEM issued commercial wind energy lease OCS-A 0486 to Deepwater Wind New England LLC in 2013. Deepwater Wind New England, LLC, later changed its name to Revolution Wind, LLC. BOEM issued a Final Environmental Impact Statement (FEIS) for the project in July of 2023, and BOEM issued a Record of Decision (ROD) deciding to approve the COP for the project on August 21, 2023, and subsequently issued its final letter approving the COP for the project on November 17, 2023. The conditions for this approval were last updated on April 25, 2024.

3. Regardless of the stage of decision-making under OCSLA, BOEM has a continuing responsibility to ensure that activities it has approved under 43 U.S.C. § 1337(p) comply with the requirements in paragraph (p)(4). On January 20, 2025, President Trump issued a Presidential Memorandum entitled, Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects. Section 1 of the Presidential Wind Memo directs the Secretary of the Interior to review existing wind energy leases on the Outer Continental Shelf. 90 Fed. Reg. 8363 (Jan. 29, 2025).

4. In approving the COP for the project, BOEM's assessment of the requirements under section 1337(p)(4), as reflected in Appendix B of the ROD (BOEMGO_3046), attempted to balance those elements as if they were part of a set of flexible considerations that are weighed together to guide a decision. According to the legal framework described in the ROD, BOEM could consider the purported benefits of the project without ensuring that all of the paragraph (p)(4) requirements were met. (BOEMGO_2884). And, importantly, if one or more of those considerations—also

referred to in the ROD as "policy goals" even though they are statutory requirements—were in conflict with others, BOEM, acting for the Secretary of the Interior, would retain "wide discretion" to prioritize certain "goals" over others. *Id.* This interpretation permits, for example, the Secretary to approve activity in a manner that causes unreasonable interference with reasonable uses of the exclusive economic zone, the high seas, and the territorial seas (§ 1337(p)(4)(I)).

5. I believe this to have been an error. The text of § 1337(p)(4) requires the Secretary of the Interior, to ensure that any activity is approved in a manner that reflects compliance with each of the enumerated requirements. And BOEM must be able to point to findings in the record that demonstrate that each requirement is satisfied. Among those, § 1337(p)(4)(I) requires the Secretary to approve activities in a manner that prevents interference with reasonable uses of the exclusive economic zone, the high seas, and the territorial seas. The FEIS and ROD both describe potential "major adverse" impacts on other users of the OCS. (BOEMGO_16; BOEMGO_2894; BOEMGO_3017) BOEM's prior decision documents do not adequately explain how such major adverse impacts are consistent with OCSLA's requirement to approve activities in a manner that prevents interference with reasonable uses. Similarly with other § 1337(p)(4) factors, BOEM's decision documents list relevant "moderate adverse" and "major adverse" impacts to certain resources, such as impacts to various endangered species (*see, e.g.*, BOEMGO_2895-96) but nevertheless determine that the COP could be approved despite those impacts. For those reasons, the COP needs to be reconsidered.

6. Because of this misapplication of § 1337(p)(4), MMA is reconsidering its prior COP approval decision and properly considering whether the activities proposed in Revolution Wind's COP would fully comply with all the requirements in § 1337(p)(4).

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 9th day of October, 2026

MICHAEL OLSEN

Digitally signed by MICHAEL OLSEN
Date: 2026.10.09 15:26:11 -04'00'

Michael D. Olsen
Acting Director
Marine Minerals Administration
Department of the Interior